IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

STEPHEN TORRES, as Personal Representative
of the Estate of CHRISTOPHER TORRES, deceased,

      Plaintiff,

v.                                    No. CIV 12-1048 RB/KBM

**CITY OF ALBUQUERQUE**, ex rel.
**ALBUQUERQUE POLICE DEPARTMENT;**
**CHRISTOPHER BROWN;** and
**RICHARD HILGER**,

      Defendants.

## PLAINTIFF'S MOTION *IN LIMINE* TO PREVENT THE INTRODUCTION OF EVIDENCE OR TESTIMONY ABOUT THE DETAILS OF EVENTS DETECTIVES BROWN AND HILGER ADMIT THEY KNEW NOTHING ABOUT BEFORE MR. TORRES' DEATH

Plaintiff Stephen Torres, as Personal Representative of the Estate of Christopher Torres, deceased, through his attorneys, McGinn, Carpenter, Montoya & Love, P.A., and pursuant to Federal Rules of Evidence 401 through 403 and 801 through 807, respectfully move the Court to exclude any evidence or testimony about the details of events involving Christopher Torres that were documented by law enforcement before was killed because:

    1.  Statements made by third-parties and then documented in police reports or law enforcement notes constitute double hearsay that would be offered for the truth of the matter asserted—*i.e.* whether Christopher Torres acted aggressively or violently and was therefore prone to violence;

    2.  Testimony about the observations of any third-party related to Mr. Torres' pre-shooting actions, with the narrow exceptions of Detectives Brown and Hilger's testimony about why they were at the Torres home in the first place and notice that existed that would have showed them that Mr. Torres was schizophrenic and should only interact with law enforcement through a Crisis Intervention Team officer, is irrelevant since Detectives Brown and Hilger knew nothing about them before going to Mr. Torres' home and killing him; and

1

3. Such testimony would be used only to attempt to convince the jury that Mr. Torres acted in conformity with previous allegations of aggressive or violent behavior and would result in undue prejudice and a series of unnecessary mini-trials.[1]

## BACKGROUND

Minutes before he was killed on April 12, 2011, Christopher Torres was sitting peacefully in his backyard, wearing his pajamas and socks, and spending time with his dog. While Mr. Torres was quietly sitting, Albuquerque Police Department Detectives Christopher Brown and Richard Hilger pulled up to the Torres home in an unmarked car wearing plain t-shirts and jeans. They saw Mr. Torres in the backyard and approached him by aggressively talking to him through the fence. They were there to serve an arrest warrant for a traffic incident that had allegedly occurred on February 17, 2011—nearly two months earlier—involving another driver, Lynette Gallegos. Mr. Torres had no idea who Detectives Brown and Hilger were or why they were there. Within seconds of making contact with Mr. Torres, Detective Brown jumped the backyard fence to rush and tackle him, while Detective Hilger removed a panel of the fence to enter the backyard. The officers beat Mr. Torres, who was completely unarmed, before shooting him to death three times in the back.

Detectives Brown and Hilger admit that when they approached Mr. Torres at his home they had no information about him except for (1) a description about what Lynette Gallegos alleges happened in the traffic incident on February 17, 2011 (the allegations for which they went to the Torres home to arrest Mr. Torres) and (2) a "Detailed History for Police Call" print-out that list complaints from January 25, 2011 to March 29, 2011 regarding a person or persons driving a vehicle to which Mr. Torres had access. They could have, but did not, access information in APD's system on Mr. Torres documenting an event that occurred on February 20,

---

[1] Pursuant to Local Rule 7.1, Defendants were contacted to determine whether this motion is opposed. As of the filing of motion, no response has been received. Defendants' opposition is therefore assumed.

2011 at a Garcia's restaurant that resulted in Mr. Torres him being assigned a Crisis Intervention Team officer, Xavier Lopez, to be the point person at APD for any future interactions. Officer Lopez was assigned to Mr. Torres after APD Officers David Sprague and Derrick Hathaway made contact with Mr. Torres' family following the Garcia's incident. Mr. Torres' parents informed both Officers that Mr. Torres had been diagnosed with schizophrenia and that if law enforcement ever needed to interact with him, they would be fully willing to cooperate.

Despite the Officers' ignorance of any of Mr. Torres history, Plaintiff anticipates that Defendants seek to offer at trial hearsay police reports or notes and third-party testimony related to Mr. Torres' alleged previous actions. Their reason for doing so would be no more than to shift the focus of the trial away from the Detectives reckless actions and to justify their misconduct. For the reasons that follow, those hearsay documents and testimony about events other than the shooting, the reason the Detectives were at the Torres home, and APD's knowledge of Mr. Torres' need to only interact with a Crisis Intervention Team member are irrelevant and prejudicial to the fair and just resolution of this case and must be deemed inadmissible at trial.

### I.  POLICE REPORTS AND NOTES ABOUT OTHER ALLEGED INCIDENTS INVOLVING MR. TORRES ARE INADMISSIBLE DOUBLE HEARSAY

The Federal Rules of Evidence generally prohibit the admissibility of hearsay, which is any statement that the declarant does not make while testifying at trial that is being offered "to prove the truth of the matter asserted in the statement." FED. R. EVID. 801(c), 802. Such evidence can only be admitted into evidence if it falls within an exception to the general rule of inadmissibility under the Rules. FED. R. EVID. 803, 804, 807.

Any notes or report taken by someone affiliated with law enforcement transcribing the observations and statements of a witness constitutes "double hearsay"—"the report itself, and

what the citizen told police." *United States v. Taylor*, 462 F.3d 1023, 1026 (8th Cir. 2006). Courts across the country have routinely held that this type of double hearsay is inadmissible evidence, particularly because such double hearsay insulates witnesses from cross-examination and deprives a party the ability to fully and fairly confront a witness. *See, e.g.*, FED. R. EVID. 803 advisory committee notes (explaining that during the process of creating a police report, while the officer or other law enforcement personnel creating the report is acting in the regular course of duty, the person providing the crucial information related to what s/he observed is not); *United States v. Snyder*, 787 F.2d 1429, 1433 (10th Cir. 1986) ("[A]lthough entries in a police report or investigating officer's report which result from the officer's own observations and knowledge may be admitted, statements made to the officer by third parties under no business duty to report may not."); *United States v. Taylor*, 462 F.3d 1023, 1026 (8th Cir. 2006) ("The report contained only a recitation of the citizen's statements to the police. Those statements fell under no exception to the hearsay rule."). "To allow the introduction of [such] statements would impermissibly insulate them from the test of cross-examination…." *Taylor*, 462 F.3d at 1026.[2]

Based on Defendants' questions during the depositions in this case, it appears that Defendants will offer into evidence several police reports and documents ("Detailed History for Police Call") describing Mr. Torres' previous alleged behavior. All of these events occurred before Detective Brown shot Mr. Torres and had nothing to do with why the Detectives went to Mr. Torres' home or how they approached him. Those documents were created by law enforcement personnel for unrelated events from third party witness interviews and telephone calls. Defendants would use these documents to attempt to prove the truth of the matter asserted—that Mr. Torres acted aggressively or violently in the past and was therefore prone to

---

[2] If a witness who made a prior statement testifies at trial, any inconsistent prior statement, including one included in a police report, would not be considered hearsay and could be used to impeach that witness. FED. R. EVID. 801(d).

aggressive, violent behavior. The information included in these documents is unreliable hearsay and should not be permitted to reach the jury.

## II.     EVIDENCE ABOUT OTHER ALLEGED INCIDENTS INVOLVING MR. TORRES ARE NOT RELEVANT TO THE ISSUES OF THIS CASE

Not only is the information included in the police reports and notes described above hearsay, but it is irrelevant to this lawsuit. "Irrelevant evidence is not admissible." FED. R. EVID. 402. Evidence is relevant "if it has any tendency to make a fact more or less probable…and the fact is of consequence in determining the action." FED. R. EVID. 401; *see also Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1234 (10th Cir. 2004) ("Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). When evidence will not make a fact of consequence more or less probable, it is irrelevant and inadmissible. FED. R. EVID. 401 advisory committee notes ("[T]he exclusion of evidence which is not relevant is left to implication.").

Plaintiff's claims would not exist but for the events of April 12, 2011 when Detectives Brown and Hilger beat and fatally shot a terrified and confused Mr. Torres. All police reports, notes, and third-party testimony related to the alleged conduct of Mr. Torres before his death on April 12, 2012, notwithstanding the events involving Ms. Gallegos on February 17, 2011, have nothing to do with why the officers were at the Torres home, why they entered his backyard aggressively, or why they shot Mr. Torres. Each witness who has knowledge of these events, including Lynette Gallegos, knows absolutely nothing about what happened the day Mr. Torres was killed. The sole purpose of presenting the jury with this evidence would to create the impression that Mr. Torres was an aggressive, violent, and un-sympathetic person and would only confuse the issues and waste the time of the jury in objectively evaluating the behaviors of

Detectives Hilger and Brown.  Evidence unrelated to the events of April 12, 2012 will not make any fact at issue more or less probable than it would be without it and should not be permitted to reach the jury.[3]

### III. EVEN IF MINIMALLY RELEVANT, EVIDENCE ABOUT OTHER ALLEGED EVENTS INVOLVING MR. TORRES WOULD RESULT IN UNNECESSARY AND UNDULY PREJUDICIAL MINI-TRIALS

"Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED R. EVID. 404(b)(1).  This is because such character evidence "tends to distract the trier of fact from the main question of what actually happened on the particular occasion."  *Id.* committee commentary.  Any evidence of "prior bad acts" may only be introduced to show something ***other than propensity*** to act a certain way, and the offering party must be able to show "a strong nexus between the evidence and the [permissible] reason for which it is offered." *United States v. Morris*, 287 F.3d 985, 990 (10th Cir. 2002).  Even with such a showing, the reviewing court must make a Rule 403 determination that the probative value of any "prior bad act" is substantially outweighed by its potential for unfair prejudice. *Id.*

It is anticipated that Defendants' counsel will attempt to use evidence and testimony focused on Mr. Torres' alleged prior actions to convince the jury that he had a propensity for losing his temper and acting aggressively.  The logic follows that because Mr. Torres had a propensity for aggression, he likely was aggressive with Detectives Brown and Hilger on the day he was shot and that because he was aggressive, the Detectives justifiably shot him in the back.

---

[3] As explained above, there exist a few narrow but important exceptions to the irrelevance of this type of information.  This includes the relevant information related to (1) the Detectives' testimony about why they went to Mr. Torres' home; (2) information available to the Detectives that would have conveyed to them that Mr. Torres had mental health issues, including the assignment of Officer Lopez as his Crisis Intervention Team officer; and (3) the communications with Mr. Torres' parents with Officers Sprague and Hathaway following the Garcia's incident assuring that they were fully willing to cooperate if APD ever needed to speak with Mr. Torres.

However, allowing Defendants to use examples of Mr. Torres supposed character to establish facts about what happened on the day he was killed would contradict the fundamental purpose of Rule 404 and would allow them to distract the jury from the true issues of the case—*i.e.*, what happened on the day Mr. Torres was killed.  If Defendants were permitted to get into other specific instances of Mr. Torres' conduct to prove his propensity for aggression, not only would that result in impermissibly undue prejudice, but it would also effectively require a mini-trial for each allegation of conduct, replete with witnesses and exhibits to support conflicting versions as to what actually happened.  Such mini-trials to decide unrelated events would only confuse the issues and cause a massive waste of time, making such evidence and testimony impermissible under both Rules 403 and 404.

At trial, Detectives Brown and Hilger will be able to testify about how they perceived Mr. Torres' behavior before he was shot in the back on April 12, 2011.  The same is true of Christie Apodaca, the independent witness who saw exactly what happened through her backyard fence.  However, allowing Defendants to get into unsubstantiated and unrelated accusations to bolster their defense that Mr. Torres had a propensity for aggression and violence would result in the very type of unfair prejudice that Rules 403 and 404 were put in place to avoid.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully moves this Court for an order precluding Defendants from introducing evidence or testimony about the details of events involving Christopher Torres that were documented by law enforcement before was killed.

Respectfully submitted,



*/s/Tyler J. Atkins*
Tyler J. Atkins
Randi McGinn
Kathleen J. Love
McGinn, Carpenter, Montoya & Love, P.A.
Counsel for Plaintiffs
201 Broadway Blvd., SE
Albuquerque, NM 87102
Phone: (505) 843-6161
Fax: (505) 242-8227

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing pleading was served upon all counsel of record via electronic mail on this the 30th day of January, 2014. Furthermore, I caused the foregoing to be electronically filed through the Second Judicial District Court Odyssey File & Serve system, which caused all counsel of record to be served by electronic means:

>Luis E. Robles
>Robles, Rael & Anaya, PC
>500 Marquette Ave NW, #700
>Albuquerque, NM 87102
>luis@roblesrael.com

>W. Ann Maggiore
>Butt, Thornton & Baehr, PC
>P.O. Box 3170
>Albuquerque, NM 87190
>wamaggiore@btblaw.com

*/s/ Tyler J. Atkins*
Tyler J. Atkins