# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**STEPHEN TORRES, as Personal Representative**
**of the Estate of CHRISTOPHER TORRES, deceased.**

       Torres,

v.                                                              No. CIV 12-1048 RB/KBM

**CITY OF ALBUQUERQUE, ex rel.**
**ALBUQUERQUE POLICE DEPARTMENT;**
**CHRISTOPHER BROWN; and**
**RICHARD HILGER,**

       Defendants.

## <u>CITY DEFENDANTS' MOTION FOR SEPARATE TRIALS</u>

Defendants, the City of Albuquerque ex rel. Albuquerque Police Department, Christopher

Brown and Richard Hilger (hereinafter collectively referred to as "City Defendants"), through their

attorneys, Robles, Rael & Anaya, P.C. (Luis Robles, Esq.) and Butt, Thornton & Baehr, P.C. (W.

Ann Maggiore, Esq.), and pursuant to Fed. R. Civ. P. 42(b), state the following for their Motion

for Separate Trials[1]:

### INTRODUCTION

This is a suit against the Albuquerque Police Department (the City), and its employees,

Christopher Brown and Richard Hilger, arising out of the shooting death of Christopher Torres on

---

[1]    **Error! Main Document Only. Error! Main Document Only.** As allowed by D.N.M.LR-Civ. 7.7, City Defendants have combined this Motion with the memorandum in support thereof. As required by D.N.M.LR-Civ. 7.1(a), City Defendants e-mailed a letter to Plaintiff's counsel on January 28, 2014 to determine whether Plaintiff concurred with or opposed this motion. This Motion is opposed.

April 12, 2011.  Plaintiff asserts that the City of Albuquerque's custom of allowing excessive force and its decision to discriminate against citizens with mental illness directly and proximately caused Christopher Torres' death.  Separately, Plaintiff asserts that Detectives Brown and Hilger caused Christopher Torres' death through the use of excessive force.  Specifically, Count I of the Complaint is a *Monell* claim under 42 U.S.C. § 1983 against the City alleging that the City has allowed a custom of its officers "using excessive, deadly force."  In Count II of the Complaint, Plaintiff contends that the City discriminated against Christopher Torres by choosing not to provide adequate protection for citizens with mental illnesses in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §1213.  Finally, Torres claims in Count III that Defendants Brown and Hilger violated Christopher Torres' Fourth Amendment rights through the use of excessive force.  Thus, the Complaint presents two different sets of claims, those against the individual officers involved in the shooting, which are primary, and those for municipal liability, which are secondary.

## LEGAL ARGUMENT

Federal Rule of Civil Procedure 42(b) authorizes this Court to order separate trials on issues in the same case in circumstances such as these.  In deciding whether to bifurcate the trial, the Federal Rules of Civil Procedure give this Court broad discretion.  *See Anaeme v. Diagnostek*, 164 F.3d 1275, 1285 (10th Cir. 1999), *cert. denied*, 528 U.S. 814 (1999); *Eastridge Dev. Co. v. Halpert Associates*, 853 F.2d 772, 781 (10th Cir. 1988).  The exercise of this Court's discretion to bifurcate "will be set aside only if clearly abused." *Anaeme*, 164 F.3d at 1285 (citation omitted); *Easton v. City of Boulder, Co.*, 776 F.2d 1441, 1447 (10th Cir. 1986), *cert. denied*, 479 U.S. 816 (1986).

As noted, in the Plaintiff's Complaint for Deprivation of Civil Rights and Violation of Americans with Disabilities Act, Plaintiff alleged two types of claims.  Plaintiff alleged Section 1983 civil rights claims (hereinafter referred to as the "primary claims") against the individual officers.  *See* [Doc. No. 1], Count III.  Plaintiff also brought Section 1983 claims against the Albuquerque Police Department (the City) for alleged unconstitutional policies and practices and failure to train and supervise its officers in the use of force, and a claim against the City for discrimination in violation of the Americans with Disabilities Act (ADA) ("municipal claims").  *See* [Doc. No. 1], Claims I and II.  Plaintiff's two types of claims are quite different, requiring proof of different facts, calling for different witnesses, and involving substantially different legal standards, making them incompatible for a single trial.  There is also the danger that evidence admissible on the municipal liability claims will contaminate the mind of the jury in its consideration of Detectives Brown and Hilger's potential liability on the primary claims.  Finally, the municipal liability claims brought against the City are derivative, and thus dependent upon the outcome of the primary claims against Detectives Brown and Hilger, making it inefficient to try the two sets of claims together.

Holding separate trials for Plaintiff's primary claims and his municipal liability claims would satisfy all of the elements of Federal Rule of Civil Procedure 42(b).  Bifurcating the trial of Plaintiff's two types of claims will advance Rule 42(b)'s goal of convenience.  Furthermore, granting bifurcation will streamline and simplify the trial of Plaintiff's claims.  On the other hand, failure to bifurcate the municipal liability claims will result in unfair prejudice to the City and Detectives Brown and Hilger.  Therefore, the Court should hold separate trials for Plaintiff's primary claims and his municipal liability claims.

I.      **HOLDING SEPARATE TRIALS FOR PLAINTIFF'S PRIMARY CLAIMS AND HIS MUNICIPAL LIABILITY CLAIMS WOULD SATISFY ALL OF THE ELEMENTS OF RULE 42(b).**

Bifurcation of Plaintiff's claims satisfies Rule 42(b)'s standards.   Rule 42 states, in pertinent part:

> (b) Separate Trials.  The court, *in furtherance of convenience or to avoid prejudice*, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim . . . or issue . . ..

Fed. R. Civ. P. 42(b) (emphasis added).  "Bifurcation is not an abuse of discretion if such interests favor separation of issues and the issues are clearly separable."   *Angelo v. Armstrong World Industries, Inc.*, 11 F.3d 957, 964 (10th Cir. 1993).

The three grounds for bifurcation set forth in Rule 42(b) are construed in the disjunctive instead of the conjunctive.  *Organic Chemicals, Inc. v. Carroll Products, Inc.*, 86 F.R.D. 468, 470 (W.D. Mich. 1980); *In re Paris Air Crash of March 3*, 1974, 69 F.R.D. 310, 318 (C.D. Cal. 1975). Thus, City Defendants need only demonstrate that bifurcation of the proceedings will satisfy one of the goals set forth in Rule 42(b), not necessarily all of them.  *Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F. Supp. 1429, 1433 (D. Del. 1989); *Organic Chemicals*, 86 F.R.D. at 470; *United States v. International Business Machines Corp.*, 60 F.R.D. 654, 655 (S.D.N.Y. 1973).  Under the facts of this case, however, bifurcation of Plaintiff's claims will meet all of the goals of Rule 42(b).  *See also* Fed. R. Civ. P. 1.

In applying Rule 42(b), this Court should also consider the last sentence of Rule 1 of the Federal Rules of Civil Procedure, which provides that the Federal Rules of Civil Procedure "shall be construed to secure the just, speedy and inexpensive determination in every action."  Fed. R. Civ. P. 1.  "It is this command that gives all other rules life and meaning and timbre in the realist

4

world of the trial court." *In re Paris Air Crash*, 69 F.R.D. at 318.  Because bifurcation would further the stated goals of Rule 42(b) and Rule 1, City Defendants respectfully request that the Court exercise its sound discretion and order separate trials for Plaintiff's primary claims against Detectives Brown and Hilger and municipal liability claims against the City.  *Stoddard v. Ling-Temco-Vought, Inc.*, 513 F. Supp. 314, 327 (C.D. Cal. 1980); *In re Paris Air Crash*, 69 F.R.D. at 314; *see also* 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2389 at p. 284 (1971).

### A.   BIFURCATION OF PLAINTIFF'S CLAIMS WILL PROMOTE RULE 42(b)'S STANDARD OF CONVENIENCE.

Holding separate trials for Plaintiff's primary claims and his municipal liability claims will advance Rule 42(b)'s standard of convenience.  On the one hand, a trial on the primary claims is limited to the facts of the incident and the damages incurred by Plaintiff.  On the other hand, a trial of Plaintiff's municipal liability claims would require a massive undertaking by both sides.  To prove his municipal liability claims, Plaintiff must introduce evidence which proves a "number of prior incidents of police [misconduct], the nature of such incidents, and the municipal policy makers' reaction to them."  *Marryshow v. Town of Bladensburg*, 139 F.R.D. 318, 320 (D. Md. 1991).  In response, the City must prove that no official act, policy, or custom exists which caused Detectives Brown and Hilger to use excessive force against Christopher Torres or to violate his rights under the ADA.

If the trial is bifurcated, the parties can focus on the most important issues first: Plaintiff's primary claims.  Preparation for trial and the presentation of evidence will certainly be easier if the parties are allowed to focus on the primary claims alone.  Plaintiff cannot guarantee that he will prove that Detectives Brown and Hilger violated Christopher Torres' Fourth Amendment

rights.  Thus, holding a trial for Plaintiff's municipal liability claims after he has proven his primary claims will ensure that neither the Court's nor the jury's time is wasted by hearing the municipal liability claims before it is clear they are supported by unconstitutional conduct on the part of the officers.  Moreover, it will spare the Court the effort of repeatedly emphasizing different standards by which to evaluate the claims and spare the jury the confusion of attempting to keep the different standards straight while combing through mountains of evidence.  Bifurcation would make trying the issues in this case more convenient and efficient for all parties involved.

**B.    GRANTING SEPARATE TRIALS FOR PLAINTIFF'S PRIMARY CLAIMS AND MUNICIPAL LIABILITY CLAIMS WOULD STREAMLINE AND SIMPLIFY THE TRIAL OF PLAINTIFF'S CASE.**

Bifurcation would also streamline and simplify the presentation of proof.  The trial of the primary claims and the trial of the municipal liability claims would inherently involve different legal theories, defenses, and evidence.  The standards of liability, causation, and damages of the two types of claims are completely discrete and wholly variegated.  Because the two types of claims are so different, and different proof is required, bifurcation is appropriate.  *Baxter Travenol Laboratories, Inc. v. LeMay*, 536 F. Supp. 247, 250-51 (S.D. Ohio 1982).  The Tenth Circuit has repeatedly recognized this, and has frequently approved the bifurcation of such claims.  *See*, *e.g.,* *F.D.I.C. v. Everett A. Holseth & Co.*, 36 F.3d 1004, 1008 (10th Cir. 1994); *Oulds v. Principal Mutual Life Insurance Company*, 6 F.3d 1431, 1434 (10th Cir. 1993); *see also Lomeli v. City of Albuquerque*, No. Civ. 01-443 BB/WWD, slip op. at 2 [Docket No. 74] (stating that bifurcation in an excessive force case "is likely to simplify some potentially difficult evidentiary issues.").  More specifically, courts have also frequently bifurcated claims against individual officers and

municipalities as a result of the use of force to streamline and simplify the presentation of proof. To streamline and simplify this case, bifurcation is warranted.

### C.     SPECIFICALLY, TRIAL ON THE PRIMARY CLAIMS MAY ELIMINATE THE NEED FOR TRIAL ON PLAINTIFF'S MONELL AND ADA CLAIMS, THUS BIFURCATION IS MORE EFFICIENT.

If Plaintiff cannot prevail on his primary claims, it will eliminate the need for trial on Plaintiff's *Monell* and ADA claims.  It is therefore prudent to bifurcate the trials and allow a jury to make a determination as to whether Detectives Brown and Hilger used excessive force at all.  If the jury decides in Plaintiff's favor, he will have opportunity to present his remaining claims, but if the jury decides the Defendant Officers used reasonable force, there will be no grounds to try the other two claims.

#### 1.     Plaintiff's *Monell* Claim Against the City.

Plaintiff's Count I alleges that the "Albuquerque Police Department's policy and practice of inadequate training and culture of excessive uses of force caused the wrongful death of Christopher Torres."  [Doc. No. 1] at 8.  The Complaint further alleges "APD had a policy and practice of failing to adequately monitor, supervise, discipline and otherwise control its police officers."  *Id.*   According to Plaintiff, this "deliberate indifference…proximately caused the constitutional deprivation resulting in Christopher Torres' wrongful death and damages."  *Id.* at 9.

The Supreme Court has explained that where a plaintiff sues a municipal entity on the grounds that they are "legally responsible" for an officer's action and the officer "inflicted no constitutional injury on the respondent," it is "inconceivable that [the city] could be liable" to the plaintiff.  *City of Los Angeles v. Heller*, 475 U.S. 796, 798 (1986); *see also  Apodaca v. Rio Arriba County Sheriff's Dept.*, 905 F.2d 1445, 1447–48 (10th Cir.1990) (When there is no underlying

constitutional violation by a county officer, there cannot be an action for failing to train or supervise the officer); *Trigalet v. City of Tulsa, Oklahoma*, 239 F.3d 1150, 1154 (10th Cir. 2001) (internal citations omitted) ("[a] claim of inadequate training, supervision, and [pursuit] policies under § 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation by the person supervised").

The Tenth Circuit has examined the relationship between claims against individual officers and their supervising entity in an excessive force claim specifically in *Myers v. Oklahoma County Bd. Of County Com'rs*, 151 F.3d 1313 (10th Cir. 1998). In *Myers*, the Oklahoma County Sheriff's Department shot and killed Tom Myers. His survivors sued the sheriff, the county and the two officers who shot Myers. *Id.* Myers was locked in his apartment, drunk and suicidal when his wife called the Sheriff's Department. *Id.* at 1315. Officers attempted to enter the apartment and take Myers into protective custody, per a court order, but Myers pointed a rifle at the officers and was ultimately shot. *Id.* Myers' survivors brought claims of excessive force against the officers, but also claimed that the County failed to train its officers with regard to suicide prevention and counseling the mentally ill. *Id.* at 1316. The jury found that the officers did not use excessive force against Myers. The court then noted that "the plaintiffs' failure to train claims, like their basic excessive force claim against the individual officers, requires a predicate showing that the officers did in fact use excessive force against Mr. Myers. The jury's finding that the individual officers were not liable would seem to foreclose both Fourth Amendment claims against the County." *Id.* at 1317.

The circumstances here are similar to those in *Myers*: Plaintiff alleges that a failure to train and supervise officers resulted in the unfortunate death of Christopher Torres, a person with mental

illness.  However, any liability on the part of the City must be predicated by a finding that the

officers used excessive force.  Thus, if Plaintiff's claim against the individual officers is tried first,

it may foreclose the need for a trial on Plaintiff's *Monell* claim, which will require the presentation

of voluminous evidence on a number of unrelated incidents as Plaintiff tries to establish a pattern

and practice of "inadequate training and culture of excessive use of force."[2] [Doc. No. 1] at ¶¶ 58-

65.

### 2.      Plaintiff's ADA claim against the City.

To prevail on a claim under Title II of the ADA, a plaintiff must prove:

(1) that he [or she] is a qualified individual with a disability;
(2) that he [or she] was either excluded from participation in or denied the benefits
of some public entity's services, programs, or activities, or was otherwise
discriminated against by the public entity; and
(3) that such exclusion, denial of benefits, or discrimination was by reason of the
plaintiff's disability.

*Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999) (citation omitted).  However, "Federal

courts have addressed [ADA] Title II claims arising from arrests under two different theories."  *Id.*

at 1220 (citation omitted).  "The first is that police wrongly arrested someone with a disability

because they misperceived the effects of that disability as criminal activity."  *Id.* (citations

omitted).  "The second is that, while police properly investigated and arrested a person with a

disability for a crime unrelated to that disability, they failed to reasonably accommodate the

person's disability in the course of investigation or arrest, causing the person to suffer greater

injury or indignity in that process than other arrestees."  *Id.* at 1220-1221 (citations omitted).

---

[2]      See section D, *infra*, for more detailed description of the evidence that would need to be
presented in support of Plaintiff's municipal claims but that are wholly unnecessary, and in some
cases inadmissible, in the claim against the individual officers.

Presumably, Plaintiff's claims fall under the second theory because police had a warrant for Christopher Torres' arrest at the time they encountered him.  As a result, Plaintiff must show that Torres was subjected to "greater injury or indignity in that process than other arrestees."  *Id.*

Because a plaintiff must prove that "he or she was…denied the benefits of some public entity's services, programs, activities or was otherwise discriminated against by the public entity," the Court's determination of Plaintiff's Section 1983 claims against the Defendant Officers greatly influences the outcome of Plaintiff's ADA claim.  Put differently, Christopher Torres cannot have suffered "greater injury or indignity" than other arrestees if the actions taken by Detectives Brown and Hilger were objectively reasonable under the *Graham v. Connor* standard for use of force.

Consider the Fourth Circuit's opinion in *Bates ex rel. Johns v. Chesterfield County, Va.*, 216 F.3d 367 (4th Cir. 2000).  In *Bates*, police sought to question an autistic seventeen year old (Bates) after receiving a call from a neighbor saying that a shirtless and incoherent boy, who he suspected of being drunk or on drugs, came into his garage and then ran into the woods after the neighbor confronted the boy.  *Id.* at 369.  When the police found Bates, they were unable to get the boy to speak with them.  Bates then sat on one officer's motorcycle without permission, the officer tried to push him off the motorcycle, and Bates fought the officer, causing the officer to bleed.  *Id.* at 369-70.  Bates later brought excessive force claims against the officers, as well as claims under the ADA against the individual officers and Chesterfield County for failing to adequately train the officers.  *Id.*  The *Bates* court determined that the officers did not use excessive force in light of the fact that Bates had, in fact, assaulted the police officer and was resisting arrest. Because the court's "Fourth Amendment scrutiny ha[d] already accounted for all the situation's circumstances" there was not need to "undertake an independent ADA inquiry."  *Id.* at 372-73.

10

The officers' response was based on "objectively verifiable misconduct," such as Bates sitting on the officer's motorcycle and then engaging in a physical struggle with the officers, including scratching one officer so that he bled. Because the response was based on the plaintiff's misconduct, there was no discrimination, and thus, no ADA violation by either the officers or the county. *Id.* at 373 and n.3; *see also Sanders v. City of Minneapolis, Minnesota*, 474 F.3d 523, 527 (8th Cir. 2007) ("It was not the City's failure to train its officers, but Alfred's apparent attempt to run over the officers that precipitated the shooting.").

Employing similar language and logic, the Tenth Circuit has affirmatively held that "officers should not be expected to make reasonable accommodations when faced with exigent circumstances, i.e., while attempting to arrest an individual who poses an immediate threat to officers or nearby civilians." *Sudac v. Hoang*, 378 F. Supp. 2d 1298, 1306 (D. Kan. 2005). In *Sudac*, the decedent had posed a "serious threat" to the defendant officer when he refused to drop a knife he was holding and raised the hand holding the knife while facing officers. *Id.* at 1302. The officers fired three shots and, unfortunately, the plaintiff died. *Id.* Thus, the court ruled that "any alleged denial of benefits or services [under the ADA] occurred because of [Plaintiff's] threatening behavior, not the officers' actions." *Id.* at 1306.

The Tenth Circuit precedent (and that from other circuits) demonstrates that, if Plaintiff's primary claims are tried separately, and a jury determines that Detectives Brown and Hilger acted objectively reasonably, there will be no need to further explore Plaintiff's claim that the City provided inadequate training resulting in discrimination in violation of the ADA. Like the officers in *Bates* and *Sudac*, Detectives Hilger and Brown have asserted that Christopher Torres' unlawful actions necessitated their use of force. It is in the interest of judicial efficiency and economy to

allow a fact finder to first determine if the officers behaved objectively reasonably under the *Graham v. Connor* standard to determine if a colorable ADA claim even remains against the City.

Because there may be no need to even hear evidence on Plaintiff's municipal claims, it is in the interest of judicial economy to bifurcate the municipal claims from the primary claims. This furthers the goals of Rule 42(b) by promoting an efficient and streamlined presentation of Plaintiff claims without putting claims before the jury that may be entirely preempted by the outcome of Plaintiff's primary claims.

### D. THE FAILURE TO BIFURCATE PLAINTIFF'S PRIMARY CLAIMS FROM ITS MUNICIPAL LIABILITY CLAIMS WOULD RESULT IN PREJUDICE TO DETECTIVES BROWN AND HILGER.

Finally, if Plaintiff's primary and municipal liability claims are adjudicated in the same trial, Detectives Brown and Hilger will suffer from unfair prejudice. Prejudice can easily occur when a jury must deliberate on several issues and consider different standards of liability. *Ismail v. Cohen*, 706 F. Supp. 243, 251 (S.D.N.Y. 1989). Prejudice can also occur when evidence is admissible only on a certain issue or against less than all of the defendants in a multiparty suit. *Id.*; *Sound Video Unlimited, Inc. v. Video Shack, Inc.*, 700 F. Supp. 127, 146 (S.D.N.Y. 1988) (citing *Ropfogel v. Wise*, 112 F.R.D. at 416 ("substantial trial disruption would result from the necessity for continuous [limiting] instructions to the jury on the separate consideration of the voluminous prospective evidence as offered against only one party and not the other; this would require a feat of mental exclusion of insurmountable proportions on the part of the jury. . .."));  *Martin v. Bell Helicopter Co.*, 85 F.R.D. 654, 656 (D. Colo. 1980); *see also Organic Chemicals, Inc.*, 86 F.R.D. at 469-70.

These facts present a prime example of asking the jury to distinguish evidence that is only admissible against only some of the defendants in a multiparty suit.  Plaintiff will need to prove that the City followed practices and customs that violate the Constitution and the ADA to succeed on his municipal liability claims.  However, were the case proceeding against only the Defendant Officers, evidence of unrelated uses of force would be inadmissible.  For example, in *Tanberg v. Sholtis*, the Tenth Circuit refused to admit evidence that the defendant officer used excessive force or illegally seized suspects in three unrelated cases. 401 F.3d 1151, 1167 (10th Cir. 2005).  Specifically, the plaintiff in *Tanberg* claimed that evidence of the officer's other acts of misconduct was "relevant under Fed. R. Evid. 404(b) to show intent and absence of mistake as well as 'consciousness and state of mind.'" *Id.* at 1167.  Citing *Graham*, the Tenth Circuit stated that "[b]ecause [p]laintiffs' federal claim for excessive force requires assessment of [the officer's] conduct under an objective standard, [p]laintiffs have failed to establish the relevance of evidence tending to shed light on aspects of [the officer's] mental state to this claim." *Id.* at 1167-68.  Thus, it is obvious that evidence of the prior acts of *other* officers would be even less relevant than the type of evidence the Tenth Circuit ruled clearly inadmissible in *Tanberg*.

Not only would such evidence be inadmissible as irrelevant, it is prejudicial to the Defendant Officers as well.  In *Ismail*, the district court reasoned that evidence concerning a municipality's failure to adequately train its officers could "prejudice the jury in the determination of the culpability of [the] defendant."  706 F. Supp. at 251.  Similarly, in *Elbrader v. Blevins*, 757 F. Supp. 1174, 1184 (D. Kan. 1991), the district court in dicta suggested that it was inclined to trifurcate the trial so that the claims against the individual defendants would first be tried, then

supervisory and municipal liability claims, and finally damages, so that prejudice would not develop against the defendants.

The same principle applies here – evidence concerning the City's failure to train its officers in the proper use of force or failure to develop policies under the ADA might prejudice the jury against Detectives Brown and Hilger.  Likewise, if the jury determines that Detectives Brown and Hilger are culpable, this might unfairly influence the jury's determination of whether the City failed to adequately train Detectives Brown and Hilger and other Albuquerque Police Department officers.

Given the facts of this case, Detectives Brown and Hilger will face not only evidentiary prejudice, but financial prejudice, if the municipal liability claims are not bifurcated from the primary claims.  During the course of this litigation, Plaintiff has learned of other, unrelated use of force incidents and shooting incidents involving the Albuquerque Police Department.  In an attempt to further his municipal liability claims, Plaintiff will certainly seek to introduce evidence of the other unrelated incidents.  If so, Detectives Brown and Hilger will have no choice but to present witnesses and evidence to disprove Plaintiff's municipal liability claims.

To defend against Plaintiff's municipal liability claims, Detectives Brown and Hilger will be forced to conduct a mini-trial for each and every incident in which other APD officer involved shooting in order to prove that their actions were objectively reasonable under the circumstances, warranting no discipline from APD.  To do this, Detectives Brown and Hilger must present the testimony of a number of fact and expert witnesses.  Even if the presentation of witness testimony is streamlined, each incident likely requires a one day mini-trial.  Aside from the prejudice to a determination of liability that the unrelated incidents' mini-trials may cause, prolonging the trial

14

in this case without any guarantee that Plaintiff will prevail on his primary claims makes no economic sense.  This will require the Court and the jury to sit through numerous mini-trials if Plaintiff's municipal liability claims are not bifurcated.

Plaintiff will need to prove that the City followed practices and customs that violate the Constitution and the ADA to succeed on his municipal liability claims.  Any evidence of an unconstitutional custom or practice also establishes the character of APD and its officers.  If allowed, "character evidence" depicting the City as an organization that violates the constitutional and statutory rights of the citizens it is sworn to protect may serve as a lens with which the jury views the evidence of Detectives Brown and Hilger's conduct.  A jury may disregard the evidence which shows that the actions Detectives Brown and Hilger took against Christopher Torres were proper because this evidence runs counter to the City's alleged unconstitutional practice and custom.  Accordingly, the jury may weigh Detectives Brown and Hilger's claims that they did not violate Christopher Torres' constitutional rights against the City's alleged practice or custom of violating citizens' rights.  Thus, the reasons which explain why a jury might punish the Defendant Officers for the "sins" of the City are simple to see.

As clearly demonstrated above, prejudice to Detectives Brown and Hilger will unavoidably develop if the municipal liability claims are not bifurcated from the primary claims.  Jury confusion could result from being prematurely forced to apply different legal standards and to segregate evidence and claims.  *See, e.g., Ismail*, 706 F.2d 243; *Marryshow v. Town of Bladensburg*, 139 F.R.D. 318.  The prejudice is easily avoidable because the jury does not have to hear evidence regarding the municipal liability claims if the primary claims are rejected in a separate trial.  *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curium).  Conversely, Plaintiff is not

prejudiced by waiting to present his municipal liability claims in a separate trial. Plaintiff can still present its entire case on the primary claims without raising the specter of other unrelated incidents. If all of the evidence regarding municipal liability is also admitted at the trial on the primary claims, Detectives Brown and Hilger could be unfairly prejudiced by the acts of other officers or other incidents. The prejudice, however, is avoidable through bifurcation.

## CONCLUSION

Plaintiff's Complaint alleges two types of claims which require proof of different facts and presentation of divergent legal standards. The two types of claims also require presentation of inherently incompatible evidence. Bifurcation of Plaintiff's primary claims and municipal liability claims would satisfy all of the elements of Federal Rule of Civil Procedure 42(b). Failure to bifurcate the municipal liability claims will result in prejudice to the City and to the individual officers, who would have to defend numerous claims unrelated to the claim against them if Plaintiff's primary and municipal claims are tried together. Furthermore, granting bifurcation will streamline and simplify the trial of Plaintiff's claims, and potentially obviate the need for trial on certain issues. Therefore, the Court should hold separate trials for Plaintiff's primary claims and his municipal liability claims.

**WHEREFORE**, the City of Albuquerque, Detective Brown, and Detective Hilger respectfully request that this Court grant their Motion for Separate Trials, order separate trials for Plaintiff's primary claims and its municipal liability claims, and order all other relief this Court deems just and proper.

Respectfully submitted,

ROBLES, RAEL & ANAYA, P.C.


By:      /s/ Luis Robles
         Luis Robles
         Attorneys for County Defendants
         500 Marquette Ave., NW, Suite 700
         Albuquerque, NM  87102
         (505) 242-2228
         (505) 242-1106 (facsimile)


I hereby certify that on this
 30th day of January 2014, the
foregoing was electronically
served through the CM/ECF
system to:

Randi McGinn, Esq.
Kathleen J. Love, Esq.
Tyler Atkins, Esq.
McGinn, Carpenter, Montoya & Love, P.A.
201 Broadway Blvd., SE
Albuquerque, NM 87102
(505) 843-6161
(505) 242-8227 (Facsimile)
randi@mcginnlaw.com
kathy@mcginnlaw.com
tyler@mcginnlaw.com

W. Ann Maggiore, Esq.
Attorney for City Defendant
P.O. Box 3170
Albuquerque, NM 87190
(505) 884-0777
(505) 889-8870
wamaggiore@btblaw.com


 /s/ Luis Robles
Luis Robles

17