**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**STEPHEN TORRES, as Personal Representative
of the Estate of CHRISTOPHER TORRES, deceased,**

       Plaintiff,

v.                                                     No. Civ. 12-1048 RB/KBM

**CITY OF ALBUQUERQUE, ex rel.
ALBUQUERQUE POLICE DEPARTMENT;
CHRISTOPHER BROWN; and
RICHARD HILGER,**

       Defendants.

**PLAINTIFF'S RESPONSE *IN OPPOSITION* TO
DEFENDANTS' MOTION FOR SEPARATE TRIALS**

       Plaintiff, through his counsel of record, submits this response respectfully requesting that

the Court deny Defendants' motion for separate trials.  Fed R. Civ. P. 42(b) governs such

bifurcation, and is improper here because:

1. Plaintiff's claims under 42 U.S.C. § 1983 and Title II of the Americans with
   Disabilities Act ("ADA"), 42 U.S.C § 1213, against municipal Defendants, are
   inextricably linked with Plaintiff's excessive force claim against individual
   Defendants Hilger and Brown, and involve overlapping facts, witnesses, and
   evidence that would be most efficiently presented to a single jury, at a single trial.

2. Principles of judicial economy favor a single trial when a single trial would not
   cause unfair prejudice to the party moving for bifurcation.

3. In the context of § 1983 claims, bifurcation is inappropriate when individual
   defendants assert the affirmative defense of qualified immunity.

4. Plaintiff's ADA claims are not dependent on a finding of excessive force against
   Defendants Brown and Hilger; thus, bifurcation would simply guarantee the need
   for two trials in this matter.

## INTRODUCTION

This case arises from an incident that occurred on April 12, 2011.  Christopher Torres was alone in his backyard when two individuals entered his property, accosted him, and ultimately shot him to death.  We will never hear Mr. Torres' account of the events of that day.  However, the record indicates the following: (1) Detectives Hilger and Brown were dressed in clothing that failed to indicate their status as law enforcement officers, (2) Detectives Hilger and Brown jumped over, or dismantled, a privacy fence to gain access to the Torres family property, (3) a neighbor who witnessed portions of the interaction believed that Mr. Torres was being accosted by criminals and called 911 to report the incident, (4) Mr. Torres was shot three times point blank in the back, by Detective Brown, and (5) Detectives Hilger and Brown claim that Mr. Torres disarmed Detective Hilger requiring them to shoot and kill Mr. Torres, based on an independent eye-witness neighbor, Plaintiff claims that Mr. Torres was never armed and was under the officers' complete control when Officer Hilger drew his gun, pointed it at Mr. Torres and threatened to shoot him.

Plaintiff has brought claims against individual Defendants Hilger and Brown for § 1983 violations.  Plaintiff has also brought claims against municipal Defendants City of Albuquerque ("City") and the Albuquerque Police Department ("APD").  Defendants have moved to bifurcate the claims against individual Defendants and municipal Defendants.  For the reasons discussed below, Plaintiff respectfully requests that Defendants' motion be denied and that Plaintiff's claims be argued in one trial to one jury.

## LEGAL ARGUMENT

A court may order a separate trial of any claim in a lawsuit <u>only</u> when it would be "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy."  Fed. R. Civ. P. 42(b).  Denying a request for separate trials is

discretionary with the trial judge and will only be disturbed on appeal for an abuse of discretion. *Eastridge Development Co. v. Halpert Associates, Inc.*, 853 F.2d 772, 781 (10th Cir. 1988) (citing *Easton v. City of Boulder, Colo.*, 776 F.2d 1441, 1447 (10th Cir. 1985), *cert. denied*, 479 U.S. 816 (1986)) (upholding district court order not to bifurcate trial when "court was clearly aware of all issues to be tried … and the instructions were carefully drafted to separate the issue[s].").  While ordering separate trials on exceedingly disparate or complex issues is an option available to trial courts when necessary to comply with Fed. R. Civ. P. 42(b), this option should be used sparingly.  *See* Fed. R. Civ. P. 42 (Advisory Committee Notes to 1966 Amendment) ("[S]eparation of issues for trial is not to be routinely ordered.").

Additionally, Defendants Hilger and Brown have asserted the affirmative defense of qualified immunity with respect to the incident that resulted in the death of Christopher Torres. The municipal defendants are not entitled under the law to this defense.  *See Owen v. City of Independence*, 445 U.S. 622, 638 (1980).  If this Court were to bifurcate the trials as Defendants request, a possibility exists that Defendants Hilger and Brown would be found not liable for reasons of qualified immunity.  This result would not, as Defendants claim, obviate the need for a second trial as to the City and APD with respect to Plaintiff's § 1983 and ADA claims.  *See Myers v. Oklahoma County Bd. Of County Com'rs*, 151 F.3d 1313, 1317 (10th Cir. 1998) (finding that officers are entitled to qualified immunity does not remove potential liability on the part of the municipality); *Paul v. City of Altus*, 141 F.3d 1185, *4, n.1 (10th Cir. 1998) (unpublished); *Medina v. City of Chicago*, 100 F.Supp.2d 893, 896 (N.D. Ill. 2000).

When, as here, a bifurcation of Plaintiff's claims would result in inconvenience, delay, and undue expense, and would not necessarily obviate the need for a second trial, an order allowing the bifurcation of Plaintiff's claims would directly violate the principles articulated in

Fed. R. Civ. P. 42(b).  Additionally, Defendants have raised no valid concerns regarding any unfair prejudice they would suffer if Plaintiff's interrelated claims sharing factual background, witnesses, and evidence were tried in a single case to a single jury.  Therefore, Plaintiff respectfully requests that Defendants' motion for separate trials be denied.

I.     **THE EVIDENCE, WITNESSES, AND FACTS OF ALL PLAINTIFF'S CLAIMS ARE INEXTRICABLY LINKED, WEIGHING AGAINST THE BIFURCATION OF TRIALS UNDER FED. R. CIV. P. 42.**

Trial courts may bifurcate claims "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, … always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution … [.]" Fed. R. Civ. P. 42(b).  Separate trials are appropriate only when "such interests favor separation of issues and the issues are clearly separable."  *Palace Exploration Co. v. Petroleum Dev. Co.*, 316 F.3d 1110, 1119 (10th Cir. 2003) (quoting *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 964 (10th Cir. 1993).

Separate trials under Fed. R. Civ. P. 42(b) "[are] inappropriate where evidence to be presented against the parties is inextricably linked."  *Skyline Potato Co., Inc. v. Tan-O-On Marketing, Inc.*, 2012 WL 2384087 * 9 (D.N.M.) (unpublished) (citing *FDIC v. Refco Grp., Ltd.*, 184 F.R.D. 623, 629 (D. Colo. 1999) (finding that bifurcation would have no effect on evidence offered at trial because claims and evidence were inextricably linked)).  As noted in *McDaniel v. Anheuser-Bush, Inc.*,

> There is an important limitation on ordering a separate trial of issues under Rule 42(b): the issue to be tried must be so distinct and separate from the others, that a trial of it alone may be had without injustice.  This limitation on the use of bifurcation is a recognition of the fact that inherent in the Seventh Amendment guarantee of a trial by jury is the *general right of a litigant to have only one jury pass on a common issue of fact.*

987 F.2d 298, 305 (5th Cir. 1993) (internal quotations omitted).

In this case, the issues and facts are <u>not</u> distinct and separate.  Plaintiff's § 1983 claims against individual Defendants Hilger and Brown and § 1983 and Americans with Disabilities Act ("ADA") claims against the City and APD arise from a singular event.  Defendants Hilger and Brown jointly accosted Mr. Torres in his backyard.  Detective Brown ultimately shot Mr. Torres to death.  This incident did not occur in a vacuum.  It may reasonably be argued that the shooting of Mr. Torres by Detective Brown is directly related to unconstitutional policies and practices, and a failure to supervise officers, on the part of Defendants City and APD.

Separate trials of individual Defendants and municipal Defendants would require duplicative efforts at a second trial by all parties involved including this Court.  Assuming, arguendo, that Plaintiff prevails in a bifurcated trial related only to claims against Defendants Hilger and Brown, a subsequent trial against municipal Defendants City and APD would require the reintroduction of testimony by: (1) Defendant Hilger; (2) Defendant Brown; (3) eyewitness Christie Apodaca; (4) Plaintiff's experts testifying to Mr. Torres's mental health history, shooting incident dynamics, and APD training policies, customs, and procedures; and (5) Defense experts testifying to the same.  Many of these witnesses will travel from out of state to participate in one or, if bifurcated, both trials in this case leading to excessive costs to all parties.  In particular, eyewitness Christie Apodaca, who is not a professional witness but is central to Plaintiff's case, now lives in the Pacific Northwest and will suffer considerable personal costs were the trial process to be unnecessarily delayed by bifurcation.

Even if individual Defendants Hilger and Brown were to prevail in an initial trial as to their liability, a trial on the liability of municipal Defendants as to Plaintiff's *Monell* and ADA claims would require duplicative testimony and evidence by each of the above listed witnesses to establish

how the interaction that resulted in Brown shooting Mr. Torres does or does not implicate

municipal Defendants' responsibilities to Mr. Torres under the Fourth Amendment and the ADA.

In addition to the parties, this Court will bear the costs of bifurcated trials given the

additional time, operating costs, and jury inconvenience associated with separate trials.

Courts have repeatedly denied motions to bifurcate § 1983 claims against multiple

defendants under the same, or similar, fact patterns. *See e.g.*, *Saviour v. City of Kansas City,*

*Kansas,* 1992 WL 1355019 * 9 (D. Kan. 1992) (motion to bifurcate municipal defendants from

individual officers with respect to § 1983 claims denied); *Vaughan v. Salinas*, 1990 WL 11055 *

1 (D. Kan. 1990) (motion to bifurcate municipal defendants from individual officers with respect

to § 1983 claims denied); *Medina v. City of Chicago*, 100 F.Supp.2d 893, 898 (N.D. Ill. 2000)

(motion to bifurcate municipal defendants from individual officers with respect to § 1983 claims

denied); *Palmer v. Nassan*, 2011 WL 195532 * 2 (W.D. Penn. 2011) (motion to bifurcate state

defendants from individual prison guards with respect to § 1983 claims denied); *McCoy v. City*

*of New York*, 2008 WL 3884388 * 3 (E.D. N.Y. Aug. 13, 2008) (motion to bifurcate municipal

defendants from individual officers with respect to § 1983 claims denied).

Therefore, given the inextricable link between the issues and facts as to all Defendants,

bifurcation of Plaintiff's claims is inappropriate and Defendant's motion must be denied.

**II.  THE POTENTIAL FOR DELAY AND WASTE OF JUDICIAL
RESOURCES THAT BIFURCATION WOULD CAUSE IS NOT
OUTWEIGHED BY PREJUDICE TO DEFENDANTS.**

Defendants argue that Detectives Hilger and Brown will suffer from unfair prejudice if

Plaintiff's claims are tried together.  *See* Motion for Separate Trials at 12 [Doc. No. 103].  The

basis for this claim is jury confusion related to evidence admissible only against one or another

Defendant.  *Id.*  This reasoning is insufficient to establish unfair prejudice sufficient to

necessitate bifurcation of trials given additional considerations undertaken by trial courts.   In

fact, it is the Plaintiff who will face unfair prejudice under Rule 42 if required to expend the

unnecessary time and expense of trying the same case twice.   Rule 42 allows for bifurcation only

"in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to

expedition and economy."   Fed. R. Civ. P. 42(b).   In this case, holding separate trials that will

require the introduction of similar testimony and evidence is not "in furtherance of convenience

[or] … conducive to expedition and economy" from the perspective of either party or this Court.

Plaintiff's constitutional and punitive damages claims against individual Defendants Hilger and

Brown necessitate the introduction of evidence that would later be reintroduced against the

municipal Defendants in a second trial.   An initial trial against individual Defendants Hilger and

Brown would not limit the introduction of evidence of APD's training policies, customs, and

procedures as implied by Defendants.   *See* Motion for Separate Trials at 5 [Doc. No. 103]

("Preparation for trial and the presentation of evidence will certainly be easier if the parties are

allowed to focus on the primary claims alone.").   Requiring a jury to hear evidence related to

APD training policies, customs, and procedures twice would unfairly prejudice Plaintiff by

forcing him to put on substantially the same case twice, and is a poor use of this Court's time and

judicial resources.

    In considering whether bifurcation is appropriate, "a court should consider a number of

factors, including whether separate trials will: (1) help to simplify the issues and avoid

confusion; … (4) result in an efficient use of judicial resources; (5) expedite or delay the

proceedings."   *Skyline Potato Co., Inc.*, 2012 WL 2384087 * 9 (D.N.M.) (unpublished) (citing 8

J. Moore, *Moore's Federal Practice* § 42.20[4][a], at 42–46).   "Bifurcation is an unusual course

of action as a general matter, because 'a single trial will usually be more expedient and

efficient.'"  *Skyline Potato Co., Inc.*, 2012 WL 2384087 * 9 (D.N.M.) (unpublished); *see also Belisle v. BNSF Ry. Co.*, 697 F.Supp.2d 1233, 1250 (D. Kan. 2010) ("[T]he party seeking bifurcation has the burden of showing that separate trials are proper in light of the general principle that a single trial tends to lessen the delay, expense, and inconvenience.").

Further, Defendants' claim that the jury will be "confused" if the claims are heard in one trial is not persuasive.  Tenth Circuit courts recognize the ability of jurors to follow limiting instructions given by the court.  With respect to joint trials "[t]he Supreme Court has observed … 'limiting instructions [] often will suffice to cure any risk of prejudice.'"  *United States v. Jones*, 530 F.3d 1292, 1303 (10th Cir. 2008) (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993); *see also United States v. Cardall,* 885 F.2d 656, 668 (10th Cir.1989) ("[T]hat juries can and will follow the instructions they are given is fundamental to our system of justice.").  Other circuits offer persuasive analysis on this topic as well.  *See e.g.*, *United States v. Console*, 13 F.3d 641, 655 (3rd Cir. 1993) ("We have long held that prejudice does not arise just because all evidence adduced is not germane to all counts against each defendant … [.]"); *United States v. Urban*, 404 F.3d 754, 776 (3rd Cir. 2004) ("[S]ome exacerbating circumstances, such as the jury's inability to compartmentalize the evidence are required.").

No indications exist that the jury in this case will be unable to compartmentalize the evidence offered against Defendants Hilger and Brown from that offered against other Defendants.  "Bifurcation is regularly used to manage … cases that are so complex that juries can better comprehend the issues if exposed to a narrower body of evidence." *Skyline Potato Co., Inc.*, 2012 WL 2384087 * 11 (D.N.M.) (unpublished) (quoting 8 J. Moore, *Moore's Federal Practice* § 42.23[2]); *see*, *e.g.*, *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957 (10th Cir.

1993) (asbestos litigation); *In re Bendectin Litigation*, 857 F.2d 290 (6th Cir. 1988) (product liability for birth defect litigation).

Bifurcation of trial under the facts of this case would cause no prejudice to Defendants. It would, however, prejudice Plaintiff and endanger his right to access the courts by forcing him to incur the expense and time of putting on substantially the same trial twice.  Given this Court's ability to negate any arguable prejudice to Defendants through the use of limiting instructions, considerations of judicial resources and delay to all parties becomes paramount.  As such, bifurcation of Plaintiff's claims is inappropriate and Defendants' motion must be denied.

### III.    PLAINTIFF'S MONELL CLAIM MAY SURVIVE A FINDING OF NO LIABILITY ON THE PART OF THE OFFICERS, MAKING BIFURCATION OF THE TRIALS INEFFICIENT AND A WASTE OF JUDICIAL RESOURCES.

Under Tenth Circuit precedent, a finding of no liability as to individual Defendants Hilger and Brown does not necessarily obviate the need for a trial on Plaintiff's claims against municipal Defendants.  Instead, conducting an initial trial as to the liability of Defendants Hilger and Brown would likely necessitate the expenditure of scarce judicial resources in a second trial to determine liability on the part of municipal Defendants regardless of the outcome of the first.

Defendant claims that bifurcation of the trials would increase efficiency given the general rule of *City of Los Angeles v. Heller*.  475 U.S. 796 (1986).  In *Heller*, the Supreme Court held that a municipality is not liable for injuries inflicted by individual officers absent a violation of the plaintiff's constitutional rights by the officers.  *Id.* at 799.  The Tenth Circuit has generally followed the *Heller* principle, but has noted an exception for the application of *Heller* in circumstances where individual officers raise qualified immunity as an affirmative defense against claims of constitutional violations.

A defense of qualified immunity asserts "an entitlement not to stand trial or face the other burdens of litigation." *Maestas v. Lujan*, 351 F.3d 1001, 1007 (10th Cir. 2003).  When qualified immunity is asserted, courts must undertake a two-step analysis. *Id.*  ("To determine whether a plaintiff can overcome a qualified immunity defense, we first determine whether the plaintiff has asserted a violation of a constitutional or statutory right, and then we decide whether that right was clearly established such that a reasonable person in the defendant's position would have known that [his] conduct violated that right.") (internal quotations omitted).  In circumstances where the facts of the case are inextricably linked with the law, a jury must decide if the actions alleged are the sort that a reasonable officer would know violated a constitutional right. *Id.*

This case presents an opportunity for the exact analysis outlined above.  Defendants Hilger and Brown have asserted the affirmative defense of qualified immunity. *See* Answer at 14 [Doc. No. 12].  Certainly under the theory of the case asserted by Plaintiff, there is no question as to the fact that Detectives Hilger and Brown violated Mr. Torres's constitutional rights.  However, if Defendants' theory of the case is accepted over Plaintiff's objection, a possibility exists that the actions of Detectives Hilger and Brown could be found justified based on qualified immunity despite a violation of Mr. Torres's constitutional rights.

A finding of qualified immunity by the jury as to the individual defendants would not obviate the need for a second trial against Defendants City and APD.  In *Meyers v. Oklahoma County Board of County Commissioners*, the plaintiff alleged the use of excessive force against individual officers and § 1983 violations against the County for "failure to train its officer in the use of deadly force or handling persons [with mental health or substance abuse issues]." *Myers v. Oklahoma County Bd. of County Com'rs*, 151 F.3d 1313, 1317 (10th Cir. 1998).  The district

court granted summary judgment to the County and Plaintiffs appealed.  *Id.* at 1315.  On appeal,

the court held

> [i]f the jury based its verdict on the ground that the officers were entitled to
> qualified immunity, the *Heller* rule precluding liability is inapplicable. … Thus, if
> a jury returns a general verdict for an individual officer premised on qualified
> immunity, there is no inherent inconsistency in allowing suit against the
> municipality to proceed since the jury's verdict has not answered the question
> whether the officer actually committed the alleged constitutional violation.

*Id.* at 1317.

Similarly, in *Paul v. City of Altus*, the plaintiff alleged § 1983 violations against individual

officers and the municipality.  141 F.3d 1185, *1 (10th Cir. 1998) (unpublished).  At trial, the

district court granted summary judgment to the municipal defendants.  *Id.*  The Tenth Circuit

remanded for additional proceedings following a finding of genuine issues of material facts as to

the training provided to the officers by the department.  *Id.* at *2.  In doing so, the court noted

> [t]he remand we now order does not necessarily entail a further trial on plaintiff's
> claim against the City. … The jury's verdict in favor of [officers] could mean that
> it decided plaintiff suffered no constitutional injury in connection with their
> actions.  In that case, plaintiff's claim against the City could not go forward.  On
> the other hand, the jury could have decided that plaintiff's constitutional rights
> *were* violated, but that the officers were entitled to qualified immunity
> because the law was not so clearly established as to hold them liable.  In that
> case, the plaintiff would still have a claim against the City, even though the
> individual officers were not liable.

*Id.* at *4, n.1.  As such, even if a jury finds that qualified immunity justified the acts of

Defendants Hilger and Brown in this case, the same jury could also find that the failure of

Defendants City and APD to properly train and supervise officers constituted a violation of Mr.

Torres constitutional rights.  *See also Medina v. City of Chicago*, 100 F.Supp.2d 893 (N.D. Ill.

2000) ("[W]hen a plaintiff loses his claim against a police officer based on qualified immunity,

he can still recover against the municipality if he can prove a constitutional deprivation caused

by a municipal policy or custom. *In this situation, bifurcation will not avoid a second trial …* [*.*]") (emphasis added).

Given the assertion of qualified immunity by Defendants Hilger and Brown, and the various possible outcomes of Plaintiff's claims against them, the bifurcation of trials requested by Defendants will not necessarily ensure efficient disposition of the Plaintiff's claims or conserve judicial resources. Therefore, bifurcation of trials does not meet the stated purpose of Fed. R. Civ. P. 42 and Defendant's motion should be denied.

### IV. THE VIABILITY OF PLAINTIFF'S ADA CLAIMS DOES NOT HINGE ON A FINDING OF EXCESSIVE FORCE BY INDIVIDUAL DEFENDANTS HILGER AND BROWN.

Defendants additionally assert that bifurcation of trials is necessary given the possibility that this court could dismiss Plaintiff's ADA claim based on a finding of no liability on the part of individual officers on Plaintiff's excessive force claim. *See Bates ex rel. Johns v. Chesterfield County, Va.*, 216 F.3d 367, 373 (4th Cir. 2000) ("We need not undertake an independent ADA inquiry in this case because our Fourth Amendment scrutiny has already accounted for all the situation's circumstances."). However, the same court later recognized that cognizable claims under the ADA could exist within the context of excessive force determinations in *Waller v. City of Danville*. 212 Fed.Appx. 162, 172 (4th Cir. 2006) (unpublished). In *Waller*, plaintiff alleged a violation of the ADA given police conduct connected to his arrest and detention. Central to this allegation was the fact that the municipality *was aware* of his mental illness. *Id.* The court held:

> [t]he district court rejected both discrimination claims, but did so based *solely* upon its earlier determination that the officers did not violate Hunt's Fourth Amendment right to be free from unreasonable and excessive force and its determination that, because such actions were constitutionally permissible under the Fourth Amendment, they were also legally permissible under the ADA and Equal Protection Clause. Plaintiff contends that an adverse determination on the Fourth Amendment claim is not necessarily determinative of the discrimination

claims and that we should, at a minimum, remand the case for further proceedings as to these claims. We agree.

*Id*. In *Bates*, officers approached an unknown suspect, in a public space, and were unaware of his mental disability at the time of the interaction. *Bates*, 216 F.3d at 371 ("I don't know if this boy is on drugs or drunk but he is acting weird or crazy and just went running through the woods.").

In the present case, Defendants Hilger and Brown were not encountering an unknown suspect in a public location. They were serving an arrest warrant on an individual with whom APD had previously interacted. APD was aware of Mr. Torres's history of mental illness. Defendants Hilger and Brown approached Mr. Torres in his backyard. As such, the rationale of *Bates* does not apply to the interaction between Defendants Hilger and Brown and Mr. Torres. Instead, this court must determine whether Defendants "failed to reasonably accommodate [Mr. Torres's] disability in the course of investigation or arrest, causing [him] to suffer greater injury or indignity in that process than other arrestees," *Gohier v. Enright*, 186 F.3d 1216, 1220–21, as correctly asserted by Defendants. *See* Motion For Separate Trials at 10 [Doc. No. 103] ("Plaintiff's claims fall under the second theory because police had a warrant for Christopher Torres' arrest at the time they encountered him.").

Since a finding of no liability with respect to Plaintiff's excessive force claims is not determinative of Plaintiff's ADA claims, bifurcation in this case would simply guarantee the need for two trials. This provides an additional reason to deny Defendants' motion, given considerations of judicial resources and the threat of unfair prejudice and undue delay to Plaintiff. Therefore, Plaintiff respectfully requests that Defendants' motion be denied.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court deny Defendant's motion and set this case for a single trial before a single jury.

Dated: February 28, 2014                    Respectfully submitted,



*/s/ Kathleen J. Love*
Kathleen J. Love
Randi McGinn
McGinn, Carpenter, Montoya & Love, P.A.
201 Broadway Blvd., SE
Albuquerque, NM 87102
Phone: (505) 843-6161
Fax: (505) 242-8227
*Attorneys for Plaintiffs*


I hereby certify that on this,
the 28th day of February, 2014,
a true and correct copy of the
foregoing pleading was served
electronically via CM/ECF to
all counsel of record


*/s/ Kathleen J. Love*