## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**STEPHEN TORRES, as Personal Representative**
**of the Estate of CHRISTOPHER TORRES, deceased,**

        Plaintiff,

v.                                     No. CIV 12-1048 RB/KBM

**CITY OF ALBUQUERQUE,** ex. rel.
**ALBUQUERQUE POLICE DEPARTMENT;**
**CHRISTOPHER BROWN; and**
**RICHARD HILGER,**

        Defendants.

## PLAINTIFF'S RESPONSE *IN OPPOSITION* TO CITY DEFEDANTS' *DAUBERT* MOTION NO. I: EXCLUSION OF BENCHMARK FIGURES FOR LOST HOUSEHOLD SERVICES AND LOST VALUE OF THE PLEASURE OF LIFE BY PLAINTIFF'S EXPERT ECONOMIST BRIAN MCDONALD

Plaintiff Stephen Torres, by and through his attorneys, McGinn, Carpenter, Montoya and Love, P.A., and pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), opposes Defendant's attempt to exclude admissible testimony from expert economist Brian McDonald, Ph.D. regarding Mr. Torres' lost value of life and lost household services.  The motion to exclude this testimony should be denied because:

1. Tenth Circuit and New Mexico's Federal District Court have repeatedly permitted Dr. McDonald to provide expert testimony to assist the trier of fact regarding the meaning of hedonic damages and the areas of life the jury may consider in quantifying the damages;

2. Although previous District Court cases have limited Dr. McDonald's testimony, New Mexico state courts have acknowledged the value to juries of allowing Dr. McDonald to give them an economic foundation for determining the value of life in the form of a description of how other entities determine the value of life and what ranges they have put on the value of life.  The testimony assists the jury in reaching an informed number for value of life damages and provides an easily identifiable basis for a verdict on appeal;

3. Dr. McDonald's testimony meets all the criteria—qualified, relevant, and reliable—for admission as outlined in *Daubert*; and

4. Dr. McDonald's testimony about calculation of loss of household services provides the Court with sound economic principles upon which to base its determination of the compensation Mr. Torres' estate should be awarded based on this loss.

## INTRODUCTION

Dr. Brian McDonald is a qualified expert in economics and how economists quantify an individual's value of life.  He has years of experience in economics, including a Ph.D. in economics, background in teaching economics, and extensive involvement in testifying as an expert witness regarding economics, value of life, and lost household services.  Defendants do not deny that Dr. McDonald is qualified as an economic expert. Instead, they argue that all of Dr. McDonald's testimony does not satisfy the *Daubert* requirements despite already established Tenth Circuit law on expert testimony as to value of life damages.  In the Tenth Circuit and the Federal District Court of New Mexico, Dr. McDonald has provided testimony on value of life damages in multiple cases and his testimony has been accepted because of its ability to assist the trier of fact in understanding value of life damages and because it satisfies Federal requirements for expert testimony under Rule 702.

Although the District Courts have previously limited his testimony to defining hedonic damages and the scope of such damages, Dr. McDonald should be able to provide additional testimony regarding the general values of an average male similar to Mr. Torres.  This type of testimony has gained support among New Mexico state courts because it assists the trier of fact, it is reliable, and because it provides an identifiable basis for appeal.

## DR. MCDONALD'S TESTIMONY

Using generally accepted and well-established research methods and studies, Plaintiff offers Dr. McDonald to testify regarding Mr. Torres' loss value of life and loss value of household services based on the facts that Mr. Torres was 27 years old at the time of death, he

worked only part-time, he was single and lived in Albuquerque, he had only an 11th grade education, and he had a life expectancy of age 77. *See* **Def. Ex. A, Dr. McDonald's Report, pg. 1.** [Doc 99-1] Based on his calculations, Dr. McDonald's found damages for lost household services of $367.083.00 in present from the date of his death to the age of his actuarial life expectancy. *See* **Def. Ex. A, pg. 1.** [Doc 99-1] Although Mr. Torres worked part time, and therefore spent more time at home providing household services than the average male who worked full time and lived alone, Dr. McDonald based his evaluation on the average 27 year old American male, who is single and works full time, thus conservatively calculating his household services damages. *See* **Def. Ex. A, pg. 1-2.** [Doc 99-1]

Furthermore, based on well-accepted, peer-review economic research on the value of life, Dr. McDonald will testify that the value of a statistical life is $5.0 million to $6.0 million in today's dollars**.** *See* **Def. Ex. A, pg. 3.** [Doc 99-1]  He will not give an opinion concerning the specific dollar amount of value of life damages for Mr. Torres.  Instead he will only provide average ranges for the value of statistical life to assist the trier of fact with determining the value of Mr. Torres lost value of life. *See* **Def. Ex. A. pg. 3.** [Doc 99-1]

While it is difficult for a jury to evaluate the dollar value of a person's life or contributions to his or her household, economic research and studies have developed methods to determine these values, and such guidelines are useful to juries to allocate values to non-monetary aspects of life. ***Compare*** **Def. Ex. B., Deposition of Dr. McDonald, 40:2-10** [Doc 99-2] ***with*** **Def. Ex. A, pg. 3.** [Doc 99-1]  Without these guidelines, the jury is left to pick a number with no information about relative values.  Based on his findings, Dr. McDonald's testimony will include explaining hedonic damages and loss household services to the jury, explaining the scope of such damages, and providing the jury with the current research and figures used by

economists and the government to value lives and household services so the jury can make an informed determination of damages in this case. **Def. Ex. A, pg. 3.** [Doc 99-1]

## <u>ARGUMENT</u>

Federal Rule of Evidence 702 permits a qualified expert to testify regarding scientific, technical, or other specialized knowledge relevant to the case if such testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. In *Daubert v. Merrell Dow. Pharmacueticals, Inc.,* 509 U.S. 579, 589 (1993) the Supreme Court held that the Federal Rules of Evidence requires the trial court to act as a gatekeeper to ensure that expert scientific testimony presented to the trier of fact is qualified, relevant, and reliable. The Tenth Circuit has explained that the trial court's "gatekeeping function is a flexible and commonsense undertaking in which the trial judge is granted 'broad latitude' in deciding both how to determine reliability as well as in the ultimate decision of whether the testimony is reliable.'" *Smith v. Ingersoll-Rand Co.,* 214 F.3d 1235, 1242 (10th Cir. 2000) (citing *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 141–42 (1999). "The purpose of the *Daubert* gatekeeping function is not to measure every expert by an inflexible set of criteria but to undertake whatever inquiry is necessary to 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Smith,* 214 F.3d at 1242 (citing *Kumho,* 526 U.S. at 152).

In *Daubert,* the Supreme Court outlined a number of factors to assist the trial court perform its gate-keeping function (i.e. potential error rate of a certain scientific techniques, general acceptance of the technique within the scientific community, peer-review of the technique, and the testability of the technique). *Daubert,* 509 U.S. at 593-95. However, as the

Supreme Court recognized in *Daubert* and its progeny, this list is not a definitive checklist or test, but simply factors to help guide the trial court. *Kumho,* 526 U.S. at 150. In the end, the trial court's decision must be tied to the facts of a particular case and the trial court should ultimately evaluate an expert's admissibility based on the "nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id.*

I.      **DR. MCDONALD'S TESTIMONY REGARDING THE MEANING OF HEDONIC DAMAGES AND THE AREAS OF LIFE THE JURY MAY CONSIDER IN QUANTIFYING THE DAMAGES IS RELEVANT, RELIABLE, AND ADMISSIBLE**

Brian McDonald's expert testimony regarding the meaning of hedonic damages and the areas of life included in quantifying hedonic damages is relevant, reliable, and admissible under Rule 702 and *Daubert.* As stated above, expert testimony is admissible if their expert knowledge will assist the trier of fact understand the evidence or to determine a fact in issue. Fed. R. Evid. 702; *Daubert*, 509 U.S. at 588.

In *Smith v. Ingersoll,* the Tenth Circuit held that the trial court appropriately exercised its gatekeeping function when it permitted an expert to testify regarding the definition of loss of enjoyment of life and the scope of such damages including "the effect the injury has on 'the ability to enjoy the occupation of your choice,' 'activities of daily living,' 'social leisure activities,' and 'internal well-being.'" *Smith,* 214 F.3d at 1245. The Court found that defining hedonic damages was admissible in cases that permit such damages. *Id.* at 1246. The Court explained that the trial court acted appropriately because state law permitted recovery of hedonic damages; therefore, it assists the trier of fact to have experts testify regarding the general meaning of such damages. *Id.* The Court found that trial court appropriately decided that such testimony was reliable and was permissible "to insure the jury did not ignore a component of damages allowable under state law." *Id.*

In subsequent district court cases, New Mexico's Federal District Courts have specifically permitted Dr. McDonald to testify regarding the meaning of hedonic damages and the areas of life included in quantifying hedonic damages. *See, e.g., Chavez v. Martin Transport, LTD.*, No. 10-0004 MV/RLP, 2012 WL 988008 (D.N.M. March 22, 2012); *Flowers v. Lea Power Partners, LLC.,* No. 09-CV-569 JAP/SMV, 2012 WL 1795081 (D.N.M. April 2, 2012); *McDonnell v. Allsup's Convenience Stores, Inc.*, No. D-0101-CV-2005-00045, 2008 WL 2164295 (D.N.M. March 20, 2008).

In this case, allowing Dr. McDonald to testify regarding the meaning of hedonic damages and the areas of life involved in these damages will help the jury understand the meaning of hedonic damages, the areas of life to consider when determining the value of these damages, and ensure that the jury makes an informed and reasonable decision rather than randomly pick a number out of the air. Such testimony is relevant to the issue of determining damages and comes from reliable methods, studies and research for evaluating the value of an individual's life. Because Dr. McDonald will provide reliable and relevant testimony regarding the meaning and scope of hedonic damages, such testimony is admissible under Rule 702 and *Daubert,* and Defendant's motion should be denied.

## II.    DR. MCDONALD'S TESTIMONY QUANTIFYING THE VALUE OF A HUMAN LIFE ASSISTS THE TRIER OF FACT IN REACHING AN INFORMED NUMBER FOR HEDONIC DAMAGES, AND PROVIDES AN EASILY IDENTIFIABLE BASIS FOR A VERDICT ON APPEAL

Plaintiff recognizes that the Tenth Circuit and New Mexico's Federal District Court have prevented experts from testifying regarding a general dollar value to a statistical life for the purposes of hedonic damages. *See, e.g., Chavez,* No. 10-0004 MV/RLP, 2012 WL 988008; *Flowers,* No. 09-CV-569 JAP/SMV, 2012 WL 1795081; *McDonnell*, No. D-0101-CV-2005-00045, 2008 WL 2164295. However, even though New Mexico's Federal District Courts have

6

limited such testimony and prevented experts from placing a dollar figure before the jury to quantify the value of a human life, state courts, including New Mexico's state courts, have permitted Dr. McDonald to provide such testimony. *See Couch v. Astec Industries, Inc.,* 2002-NMCA-084, ¶17, 132 N.M. 631, 636, 53 P.3d 398, 403 (holding that McDonald's testimony regarding ranges of values for a statistical life was admissible because it was "helpful [to the jury] in evaluating Plaintiff's claim.") *Sena v. New Mexico State Police,* 1995-NMCA-003, ¶ 29, 119 N.M. 471, 478, 892 P.2d 604, 611 (holding that it was proper for the trial court to admit expert economist testimony regarding the loss of enjoyment of life in a personal injury action). As discussed above, in the courtroom, jurors are faced with the extremely difficult task of setting a value on an individual's life without the tools or experience to accurately assess and value that individual's life. When lawyers do not provide jurors the expert testimony and tools to perform such difficult jobs as valuing a life, jurors are left to aimlessly speculate and pick numbers out of the air. The best solution to this problem is to permit expert economists to provide jurors with the research, general values, and studies that experts and professionals in the field use to evaluate an individual's life.[1]

   In this case, rather than allow the jury the assistance of a recognized expert economist with uncontested qualifications to provide the kind of information a responsible person would seek from expert sources on their own, Defendants claim that Dr. McDonald's testimony is unreliable and irrelevant, and propose the "pick a number out of the air" approach to valuing life subject to passion and prejudice instead of an accepted economical approach to such damages.

---

[1] New Mexico state appellate courts and state district courts recognize that the expert economist is the tool through which the accumulated knowledge of civilization on various approaches and values of life are presented to the jury. *Romero v. Byers,* 117 N.M. 422, 872 P.2d 840 (1994), *Couch v. Astec Indus., Inc.,* 2002-NMCA-084, 132 NM 631, 53 P.3d 398; *Sena v. N.M. State Police,* 119 N.M. 471,477-78, 892 P.2d 604, 610-11 (Ct. App. 1995); *see also, Strickland v Roosevelt County Rural Elec. Coop.,* 99 N.M. 335, 657 P.2d 1184 (Ct. App. 1982), *cert. denied,* 463 U.S. 1209, 103 S. Ct. 3540 (1983);

Such an approach is inconsistent with Rule 702 permitting expert testimony that is reliable, relevant, and will assist the trier of fact. Permitting juries to choose unsubstantiated numbers for values of life damages lays an unsteady foundation for deciding damages and will plague future cases with subsequent appeals over inexact values of damages.

In support of the Plaintiff's position, court after court in New Mexico has acknowledged the helpfulness of expert testimony on the value of life to provide the jury with "concrete guidance" in determining the loss of the enjoyment of life. *See Couch,* 2002-NMCA-084, ¶ 17 ("[I]t was proper under New Mexico law for the hedonic expert to explain his interpretation of the meaning of hedonic damages and to describe broad areas of human experience to be considered in determining such damages")*; Sena,* 1995-NMCA-003, ¶ 29; *Strickland v Roosevelt County Rural Elec. Coop.*, 1982-NMCA-184, 99 N.M. 335, *cert. denied,* 463 U.S. 1209, 103 S. Ct. 3540 (1983); *Romero v. Byers*, 1994-NMSC-031, 117 N.M. 422; *see also Folz v. State of New Mexico*, 1990-NMSC-075, 110 N.M. 457; *Corlett v. Smith*, 1988-NMCA-067, 107 N.M. 707; *Trujillo v. Sonic Drive-In*, 1996-NMCA-106, 122 N.M. 359; *Four Corners Helicopters v. Turbomeca, S.A.*, 979 F.2d 1434 (10th Cir. 1992); *Harvey v. G.M. Co.,* 873 F.2d 1343 (10th Cir. 1989); *Meller v. Heil Co.,* 745 F.2d 1297 (10th Cir. 1984).

Not only have New Mexico's courts allowed expert testimony on the value of lost pleasure of life, but the New Mexico Court of Appeals has specifically cited Dr. McDonald's testimony with approval in the seminal case on value of life damages, *Couch v. Astec Industries, Inc.*, 2002-NMCA-084, ¶ 19. In *Couch*, the New Mexico Court of Appeals stated:

> McDonald's testimony regarding statistical life studies gave the jury a range of monetary values that likely proved helpful in evaluating Plaintiff's claim. He also provided <u>concrete guidance</u> to the jury in determining a percentage of the monetary value that might reasonably compensate Plaintiff.

*Couch,* 2002-NMCA-084, ¶ 19 (emphasis added).     During that case, Dr. McDonald offered

testimony at trial explaining how he used value of statistical life studies to identify a range of dollar

values that represented the "average value of a whole life."  *Id.* ¶ 18.  He did not, as he will not in

this case, "specify the percentage of a whole life" that the specific plaintiff suffered as a result of his

injuries.  *Id.*  In *Couch*, the Court approved of Dr. McDonald's methodology and rejected the notion

that he should have offered the jury a precise value of lost life based on the extent of the plaintiff's

injuries.  *Id.* ¶ 19.  It stated that "McDonald's testimony regarding statistical life studies gave the

jury a range of monetary values that likely proved helpful in evaluating" the plaintiff's claim and

further explained that "if McDonald had…offered a specific value for Plaintiff's hedonic damages

claim, he would have intruded improperly into the fact finder's domain."  *Id.* ¶¶ 19-20.  Ultimately,

the Court reasoned, determining the precise lost value of an injured person's life is subjective, and it

is up to the fact finder to weigh the evidence presented at trial to come to a conclusion about how the

injured person "derived the most enjoyment from his life and how his injuries affected that

enjoyment."  *Id.* ¶ 19.

Dr. McDonald's testimony regarding loss value of life also has been admitted as a matter of

course in the following state district courts:

- Judge Abigail Aragon, *Baker v. Hedstrom et al.,* Fourth Judicial District Court No. No.  D-412-CV-2008-00049, permitting Dr. McDonald's testimony on lost value of life after a full evidentiary hearing.  **Ex. A.**

- Judge Timothy Garcia, *Pielhau v. RLI Insurance Co.,* Santa Fe First Judicial District Court  No. D-101-CV-200500419, permitting McDonald to testify and provide the economic ranges related to the loss of enjoyment of life (oral ruling).

- Judge Eugenio Mathis, *Briscoe v. Curtis*, Fourth Judicial District Court No. D-0424-CV-200700024, finding *Couch* and *Sena* controlling over federal decisions on lost value of life.  **Ex. B.**

- Judge Nan Nash, *Gallegos v. Pueblo of Sandia*, Second Judicial District Court No. CV-2009-04238, permitting Dr. McDonald's testimony on lost value of life damages based on *Gurule v. Ford Motor Company*, No. 29,296 filed Feb. 17, 2011.  **Ex. C.**

- Judge Raymond Ortiz, *Weckesser v. MMC,* First Judicial District Court No. D-101-CV-2010-00452, stating that "Value of Life Studies are proper and scientifically reliable in New Mexico courts and the manner in which Dr. Brian McDonald has proposed to discuss the value of life studies is permissible under New Mexico law under the *Couch* case."  **Ex. D.**

- Judge Parker, *Wiersum v. New Mexico Department of Transportation*, Ninth Judicial District Court No. CV-03-103, permitting Dr. McDonald's lost value of life testimony. **Ex. E.**

- Judge Linda Vanzi, *Bivens v. Presbyterian Healthcare Services,* Second Judicial District Court No. CV 2004-00462, permitting Dr. McDonald's lost value of life testimony.  *See* **Ex. F,** Register of Actions reflecting that Motion to Exclude Dr. McDonald's testimony was denied.

- Judge Linda Vanzi, *Wachocki v. Bernalillo County*, Bernalillo Second Judicial District Court No. CV-2005-07788, permitting Dr. McDonald to explain and testify to lost value of life in mid-trial oral ruling not reduced to written order.

- Judge Raymond Ortiz, *Hunt v. Rio Grande Ear, Nose and Throat, P.A.*, First Judicial District Court No. D-0101-CV-2010-02861, permitting Dr. McDonald's lost value of life testimony. **Ex. G.**

- Judge J.C. Robinson, *Enriquez v. Dericks*, Sixth Judicial District Court No. CV-2007-121, permitting Dr. McDonald's testimony regarding hedonic damages.  **Ex. H.**

- Judge Theodore Baca, *New Mexico Bank & Trust as conservator for Manuel Joseph Chavez vs. Victoria White and Safeway Insurance Company – New Mexico , et al.*; Second Judicial District Court No. D-202-CV-2011-05632, permitting Dr. McDonald's testimony regarding lost value of life in an oral ruling.

- Judge James T. Martin, *Sowards v. Las Cruces Medical Center, et al*; Third Judicial District No. CV-2008-2653, permitting Dr. McDonald's testimony on lost value of life. **Ex I.**

Furthermore, the New Mexico Court of Appeals has already had the opportunity to

examine Defendants' argument regarding the reliability of expert testimony on the lost value of

life and the argument was rejected. *See Gurule v. Ford Motor Co*., No. 29,296, 2011 N.M. App. Unpub. LEXIS 51, *23-25 (N.M. Ct. App. Feb. 17, 2011). In *Gurule,* the Court of Appeals determined that the district court had not abused its discretion in determining that expert economist testimony regarding the lost value of life had a reliable basis, assisted the jury and was admissible. *Id.* at *26-27. The Court noted that the expert economist's testimony "provided guidance and definitions on the meaning of hedonic damages and gave the jury a range of monetary values that likely proved helpful in evaluating Plaintiff's claim based on the same type of studies." *Id.* at *27 (internal quotations and citations omitted).

The question under Rule 702 is whether Dr. McDonald's specialized knowledge in the field of economics will assist the trier of fact. Because Dr. McDonald is able to testify to accepted economic principles, identify and incorporate pertinent data of the type normally relied upon by economists, and perform the mathematical calculations necessary to translate these economic principles and data, his testimony satisfies the relevancy and reliability requirements of Rule 702. Even though New Mexico's Federal District Courts have rejected his testimony in the past, the value and importance of such testimony cannot be ignored and this Court should deny Defendant's motion to limit Dr. McDonald testimony.

III.   **MCDONALD'S TESTIMONY REGARDING THE GENERAL VALUES OF A STATISTICAL LIFE, METHODS FOR DETERMING THE VALUE OF A LIFE, AND UNDERLYING STUDIES ARE RELEVANT, RELIABLE, AND ADMISSIBLE**

In contrast to Defendant's arguments and prior decisions from the Federal District Court, Dr. McDonald's testimony regarding the general values of a statistical life, methods for determining the value of a life, and underlying studies meet the requirements of relevancy and reliability as outlined in *Daubert* and its progeny:

**1. Testable and Peer –Reviewed**

First, Dr. McDonald's testimony relies on studies, research, and tests providing a general value of life that have been tested and subject to peer view. Despite the Defendants' unsupported assertion that the peer review of value of life studies are questionable and untestable, Dr. McDonald's report demonstrates that his testimony is based on well accepted, peer-reviewed economic research and studies on the value of a statistical life in the United States. *See* **Def. Ex. A.** [Doc 99-1]These studies were conducted by well-known researchers in the area and published in top economic journals. *See* **Def. Ex A.** [Doc 99-1] These studies, like studies in physical science, were subject to analysis and evaluations of observable economic behavior and data. As Dr. McDonald can testify, there are econometric techniques used to test economic theories. The validity of the statistical life studies has been tested and research has been replicated. In this case, Dr. McDonald's guidance to the Court will come in the form of a general discussion of the research that has been performed on the value society places on life, based on his review of the literature on this topic, and his opinion regarding a reasonable range for this value based upon this peer-reviewed economic literature. *See* **Def. Ex. A** [Doc 99-1]; It will be up to the wisdom of the Court, based on the evidence and testimony at trial, to determine the lost value of Mr. Torres' life. Any challenges then Defendant has regarding Dr. McDonald's opinion are open for cross-examination.

**2. Potential Rate of Error**

Second, the value of life studies that underlie Dr. McDonald's testimony have known rates of error. For example, one study Dr. McDonald relies on, "Age Variations in Workers' Value of Statistical Life," specifically states that it has a 95 percent confidence interval.[2] The meta-analyses

---

[2] Aldy, Joseph E. and Viscusi, W. Kip, *Age Variations in Workers' Value of Statistical Life* Harvard Law School John M. Olin Center for Law, Economics and Business Discussion Paper Series, Paper 468, 2004, at 19.

and systematic reviews of the value of life studies have independently arrived at recommended value ranges that are reasonably consistent.[3]

### 3. Generally Accepted

Finally, as discussed above, there is a vast amount of scientific research by economists that show the validity of the economic studies.[4]  The research, methodologies, and studies upon which Dr. McDonald relies to establish a range of values, are based on well-recognized scientific principles and are generally accepted in the field economics.[5] The United States government even uses studies regarding the statistical value of a life.  *See* **Def. Ex. A, Appendix A.** [Doc 99-1] Despite Defendants' argument that previous district court decisions found testimony regarding hedonic damages unreliable, the principles underlying Dr. McDonald's testimony are well-established, generally accepted, and should be admitted at trial.

### IV.   DR. MCDONALD'S TESTIOMY ON LOSS OF HOUSEHOLD SERVICES TESTIMONY IS RELEVANT, RELIABLE, AND ADMISSIBLE

Courts have recognized the benefit to juries of expert testimony as to "the most imponderable task of assigning a dollar amount" to the loss of household services.  *See Reid v. State of Louisiana*, 637 So.2d 618 (Ct. App. La. 1994); *Corlett v. Smith*, 1988-NMCA-067, 107 N.M. 707. There is no dispute that Dr. Brian McDonald is a "recognized economist qualified to express an opinion" about Plaintiff's damages.  *Cruz v. Bridgestone*, No. CIV 06-538 BB/DJS, 2008 U.S. Dist. LEXIS 107379, *7 (D.N.M. Aug. 29, 2008).

As stated above, Dr. McDonald intends to provide the jury with a framework based upon economic principles for how to evaluate Mr. Torres' damages for lost household services and

---

[3] Ted R. Miller, *Hedonic Damages: Were the Body Blows to the Golden Goose Well-Founded?*, 20 Journal of Forensic Economics 137, 138 (2007).
[4] *Id.* at 138 ("Is VSL [value of statistical life] mainstream economics?  Surely yes.").
[5] W. Kip Viscusi *The Value of Life: Has Voodoo Economics Come to the Courts?*), 3 J. of Forensic Econ. 1, 12 (1990).

allow the jury to apply the facts to those principles to determine the amount his family should be compensated for his loss. Dr. McDonald's testimony will be helpful to the jury, is based on reliable scientific principles, and will pose no threat of unfair prejudice to Defendants. Dr. McDonald's approach is the same approach to the valuation of household services used by other economists. *See McAsey v. U.S. Department of Navy*, 201 F. Supp. 2d 1081, 1098 (N.D. Ca. 2002) (describing the same methodology used by Dr. McDonald as "the standard methodology relied on by economists in the field").

Defendants contend, through a lengthy analogy to Judge Black's decision in *Cruz v. Bridgestone,* that Dr. McDonald's testimony regarding the lost household services of an average male is not applicable to Mr. Torres because he suffered from schizophrenia. The implication being that because Mr. Torres suffered from schizophrenia, he would not have been able to contribute to the household equally and as effectively as an average American male. But this is simply not true. Schizophrenia does not necessarily make a person unable to perform the same household tasks of an average person.

In fact, the opposite is true. Because Mr. Torres suffered from schizophrenia, he could not work full time and spent more time at home providing services to his family. Often times, people who have disabilities take even more pride in their abilities to provide household services because this is where they spend most of their time and are able to contribute to their households and families. Mr. Torres did yard work such as helping his mother Renatta plant flowers or mow the lawn. **Ex. J, Renatta Torres depo, 92:13-20**. He cooked multiple times a week and helped with daily chores such as laundry, dishes, sweeping, mopping, and cleaning the kitchen. **Ex. J, Renatta Torres depo, 92:21-25; 93:1-2**. Defendants' contention that Dr. McDonald's testimony does not represent Mr. Torres' life because he worked part-time and he suffered from

schizophrenia is simply false. Mr. Torres provided household services equal to any 27 year old single male without children, if not more because he worked part-time.

Dr. McDonald's testimony is as relevant and reliable for Mr. Torres as it would be for any 27 year old male, single, working, with no children. Mr. Torres' schizophrenia does not make him any less useful at providing household services than any other male of a similar age and Dr. McDonald's testimony should not be deemed irrelevant or unreliable because of Defendants' misplaced inference and interpretations of his work schedule and schizophrenia. Because Dr. McDonald's testimony regarding the general economic value of household service for a male of Mr. Torres age and marital status is reliable under Rule 702 and *Daubert,* and such testimony to Mr. Torres who performed service on par with or great than the average American male his age, the Court should permit Dr. McDonald to testify and deny Defendant's motion to limit his testimony.

## V.    DR. MCDONALD'S TESTIMOY REGARDING BOTH LOST HOUSEHOLD SERVICES AND LOST VALUE OF LIFE IS NOT DUPLICATIVE AND IS ADMISSIBLE UNDER RULE 403

Dr. McDonald's testimony on loss value of life and household services is admissible under Rule 702 and *Daubert* to assist the jury evaluate and determine two separate sets of permissible damages. Defendant argues that because a jury may confuse damages between loss household services and value of life, Dr. McDonald should not be able to provide clarifying and relevant testimony to assist the jury value both. Under Federal Rule of Evidence 403, a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Despite Defendant's characterization of Dr. McDonald's testimony as intended to mislead the jury, its actual purposes is to guide the jury in assessing damages correctly to prevent cases like *Morisson Knudsen Corp. v. Ground Improvement Techniques, Inc.,* 532 F.3d 1063 (10th Cir. 2008) where the Tenth Circuit remanded a case back to the district court because the jury's verdict could not be explained by the evidence in the record unless there was duplication of damages. *Morrison* did not remand because an expert in economics explained duplicative damages to the jury, but because the jury made an unsupported decision regarding damages indicating that the jury erroneously duplicated the damages.

Dr. McDonald's testimony is designed to assist, guide, and inform the jury, not confuse, mislead, or create unfair prejudice. In his deposition, when Dr. McDonald discussed possible duplication between lost household services and value of life, he said that duplication between the two damages is possible depending "on how the jury got to their value of life estimate." **Def. Ex B. 39:305**. [Doc 99-2] If the jury is left on their own without guidance to how evaluate both the damages, then it is possible. However, the purpose of testimony from an expert like Dr. McDonald is to prevent juries from choosing unsupported figures for damages and duplicating. It gives juries concrete guideposts to evaluate and decide a number, based on research and studies to prevent unnecessary appeals and remands as addressed in *Morrison* when juries make unsupported decisions for damages. If Dr. McDonald's testimony is unclear, such clarity can easily be remedied through cross-examination or an instruction from the Court. It does not require the extreme action of completely excluding Dr. McDonald's important and relevant testimony.

## CONCLUSION

Dr. McDonald's testimony about generally accepted approaches, research and studies economists use to value loss of enjoyment of life and loss of household services meets all of the requirements for admission under Rule 702 and *Daubert*.  For the reasons set forth more particularly herein, Defendants' motion must be denied and Dr. McDonald should be allowed to testify on these issues.

Dated: February 28, 2014                    Respectfully submitted,



**/s/ Kathleen J. Love**
Kathleen J. Love
Randi McGinn
McGinn, Carpenter, Montoya & Love, P.A.
201 Broadway Blvd., SE
Albuquerque, NM 87102
Phone: (505) 843-6161
Fax: (505) 242-8227
**Attorneys for Plaintiffs**

I hereby certify that on this,
the 28th day of February, 2014,
a true and correct copy of the
foregoing pleading was served
electronically via CM/ECF to
all counsel of record

**/s/ Kathleen J. Love**

17