IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW MEXICO

STEPHEN TORRES, as Personal Representative
of the Estate of CHRISTOPHER TORRES, deceased,

        Plaintiff,

v.                                            No. CIV 12-1048 RB/KBM

CITY OF ALBUQUERQUE, ex. rel.
ALBUQUERQUE POLICE DEPARTMENT;
CHRISTOPHER BROWN; and
RICHARD HILGER,

        Defendants.

## PLAINTIFF'S RESPONSE *IN OPPOSITION* TO DEFENDANT CITY OF ALBUQUERQUE'S MOTION NO. III: EXCLUSION OF TESTIMONY BY RONALD SCOTT

Plaintiff, Stephen Torres, as Personal Representative for his son Christopher Torres's estate, through his attorneys, McGinn, Carpenter, Montoya & Love, P.A., ask the Court to deny Defendant's Motion to Exclude Expert Testimony by Ronald Scott because:

      --Mr. Scott is an expert in ballistics, firearms, police investigations and shootings and will assist the jury in understanding what the physical evidence tells us about the shooting of Christopher Torres;

      --Mr. Scott will testify as to the different possible conclusions that may be drawn from the forensic evidence, but he will not comment on the credibility of the witnesses.

## INTRODUCTION

There are a number of issues related to the physical evidence in this case that a juror without expertise in law enforcement, firearms and investigations would not be able to resolve on his or her own.  For example, the average juror does not know whether a Kimber firearm has a veneer that easily scratches; the angle at which casings exit a gun after the gun is fired; the degree of retention of various types of gun holsters and how hard it is to get a gun out of a

holster; the angle at which a gun must be pulled to release it from a holster; whether fingerprints are typically gathered in shooting investigation.  Mr. Scott retired from the Massachusetts State police after 25 years of service.  **Ex A.**, **Scott CV at 3.**  At the time of his retirement, Mr. Scott was the Commanding Officer of the Ballistics Section.  *Id.*  Mr. Scott has investigated over 100 fatal police involved shootings and approximately 150 more non-fatal police involved shootings.  *Id.*  He has testified as an expert witness over 270 times in the areas of firearms, ballistics, shooting reconstructions, and shooting incident dynamics.  *Id.*  As such, Mr. Scott is well qualified to assist the jury in understanding the forensic evidence.

There are only 4 people who were present during any portion of the encounter between Christopher Torres and APD Officers Brown and Hilger: Christopher Torres, who is now dead, Christie Apodaca, who saw portions of the encounter, and Officers Brown and Hilger whose jobs, reputations and liberty are at stake.  Officers Brown and Hilger have given several different statements since the shooting, each time further polishing and coordinating their stories and leaving several inconsistencies unexplained along the way.

On the other hand, the physical evidence cannot change its story. Plaintiff offers Ronald Scott, an expert in firearms, ballistics, shooting reconstruction, police investigations and shooting incident dynamics to testify at trial about the story that the physical, forensic evidence tells. Some of the accounts given by APD Officers Hilger and Brown are simply inconsistent with the physical evidence.  Mr. Scott's expert witness report and his deposition testimony identify the forensic evidence that tells a different story than the stories of the officers.  He will leave determinations of credibility to the Court to make, but will explain what the forensic evidence tells us is indisputable.

Plaintiff respectfully requests that Mr. Scott's testimony and opinions be admitted under Federal Rules of Evidence 702, 403, and 401 for the purpose of assisting the jury in determining the sequence of events resulting in the death of Mr. Torres at the hands of APD Detectives Hilger and Brown.

## <u>ARGUMENT</u>

Expert testimony by law enforcement officers about what the forensic evidence means in a police investigation is exactly the type of expert witness testimony that is helpful to a jury in evaluating the facts of a case.  It is a type of expert witness testimony that is consistently admitted in federal courts to assist a jury in discharging its responsibilities of weighing the facts and evidence and reaching a conclusion in a case.  *See*, *e.g.*, *U.S. v. Nevels*, 490 F.3d 800, 804 (10th Cir. 2007) (admission of testimony by crime scene reconstruction expert upheld on appeal); *U.S. v. Alston*, 112 F.3d 32, 35 (1st Cir. 1997) (police expert testimony as to condition of weapon found at crime scene admissible); *U.S. v. Peltier*, 585 F.2d 314, 326 (8th Cir. 1978) (expert testimony as to condition of weapon found at crime scene admissible).

Federal Rule of Evidence 702 states that opinion testimony by a witness who is qualified as an expert by knowledge, skill, experience, training, or education is admissible if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Rule 702 was amended in response to *Daubert v Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137 (1999), cases in which the United States Supreme Court clarified the function of trial courts as "gatekeepers" to exclude unreliable expert testimony.

*Daubert* set out specific factors for trial courts to consider in making a determination as to the reliability of scientific expert testimony. *See Daubert*, 509 U.S. at 593–95. In *Kuhmo*, the Supreme Court held (1) the gatekeeper function outlined in *Daubert* applies to both scientific and non-scientific testimony, *Kuhmo*, 526 U.S. at 147; and (2) that the *Daubert* factors "might be applicable in assessing the reliability of non-scientific expert testimony, depending on 'the particular circumstances of the particular case at issue.'" Fed. R. Evid. 702, Advisory Committee Notes, 2000 Amendments (quoting *Kuhmo*, 526 U.S. at 150). The case at bar requires application of *Daubert* and its progeny to non-scientific expert testimony.

With respect to non-scientific expert testimony, the 2000 Amendments to Fed. R. Evid. 702 are particularly instructive. While "an opinion from an expert who is not a scientist should receive the same degree of scrutiny for reliability as an opinion from an expert who purports to be a scientist," Fed. R. Evid. 702, Advisory Committee Notes, 2000 Amendments, considerations are to be given to non-scientific testimony. *Id.* ("Some types of expert testimony will not rely on anything like a scientific method, and so will have to be evaluated by reference to other standard principles attendant to the particular area of expertise."). To make this evaluation, the Advisory Committee Notes suggest that a "trial judge … must find that [the testimony] is properly grounded, well-reasoned, and not speculative before it can be admitted. *Id.*; *see U.S. v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004); *U.S. v. Hermanek*, 289 F.3d 1076, 1094 (9th Cir. 2002).

Ronald Scott's testimony meets the standards articulated in the Advisory Committee Notes for non-scientific expert testimony. His testimony is informed by his experience and training in the areas of ballistics, firearms, shooting reconstruction, and shooting incident dynamics. His proffered opinions are grounded on an objective review of available evidence in

this case.  His conclusions are non-speculative and instead offer plausible scenarios based on uncontroverted forensic evidence as to the sequence of events that led to Mr. Torres's death. Finally, Mr. Scott's testimony will assist the finder of fact to determine which of competing versions of events is more likely true given the physical evidence and their own analysis of the eyewitness testimony to be presented at trial.

In their motion to exclude, Defendants raise several concerns as to the *correctness* of Mr. Scott's opinions or conclusions.  These concerns are not properly addressed as part of a reliability assessment by a trial court as they go to the weight, not admissibility, of Mr. Scott's testimony.  *See Daubert*, 509 U.S. at 595 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").  If the Defendants would like to assert that Mr. Scott's opinions are incorrect, the appropriate time for them to do so is at trial.  *See United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996 ("[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.").  As such, Defendant's disagreement with the conclusions drawn by Mr. Scott does not diminish the reliability of his testimony under Fed. R. Evid. 702 and *Daubert*.

Ronald Scott's expert testimony meets the standards for admissibility of non-scientific expert testimony under Fed. R. Evid. 702, 403, *Daubert* and *Kuhmo*.  Therefore, Plaintiffs respectfully request that Defendants' motion to exclude Mr. Scott's testimony be denied.

I.     **RONALD SCOTT'S EXPERT TESTIMONY IS ADMISSIBLE UNDER FED. R. EVID. 702 AND *DAUBERT* BECAUSE HE IS QUALIFIED AS AN EXPERT, HIS OPINIONS WILL ASSIST THE TRIER OF FACT, AND THE OPINIONS OFFERED ARE NON-SPECULATIVE, WELL-REASONED, AND PROPERLY GROUNDED ON THE FACTS AND EVIDENCE OF THIS CASE.**

**A.  <u>With his extensive experience as a police detective and as an expert in law enforcement, Mr. Scott is amply qualified to testify as an expert and assist the jury.</u>**

Under federal law, a witness who is qualified as an expert may testify in the form of an opinion if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702. Mr. Scott is more than qualified to provide expert opinion testimony regarding the forensic evidence in this case. (**See Ex. A**) He retired after 25-years of service with the Massachusetts State Police where he was the Commanding Officer of the Ballistics Section. In this capacity he supervised and trained personnel attached to state and municipal police forces, state agencies, Boston based military police, and federal agencies including the FBI in forensic investigation, shooting reconstruction, and the dynamics of shooting incidents. Prior to retirement he was appointed to the Massachusetts State Police Firearms Review Board that evaluated departmental officer involved shooting incidents. He has investigated over 100 police involved fatal shooting incidents and approximately 150 non-fatal police involved shooting incidents during his career. In addition to these investigative qualifications, he has extensive experience with handguns in general as a former United States Army Ordnance Corps member, and as an individual who has personally built firearms.

Ron Scott has also testified as an expert witness in 21 cases in the last five years. (**See Ex. B**)  His qualifications have withstood scrutiny on *Daubert* challenges and he has never been excluded from testifying based on those qualifications. (**Ex. C, Scott Depo at 46:25-47:2**).

**B.  <u>Mr. Scott's Non-Speculative, Well-Reasoned Testimony, Which is Properly Grounded in the Facts of the Case, will Assist the Finder of Fact by Explaining What the Forensic Evidence Discloses.</u>**

Mr. Scott will testify about forensic evidence such as:

--Officer Hilger's gun and how the safety is released on such a gun;

--Officer Hilger's holster, where it would sit on the hip and how to remove a gun from the holster, as well as the retention level of the holster at issue;

--Where Christopher Torres would have been positioned when the gunshots were fired;

--That Officer Brown held his gun in contact with Christopher's body when he shot, as evidenced by the physical evidence on Christopher's clothes and skin;

--The condition of Officer Hilger's gun after the incident and whether a gun such as his would be expected to have been scratched and damaged from the incident after having been rubbed on concrete and rocks as described by Officer Hilger;

--The lack of fingerprint testing and the typical use of this testing under usual circumstances of a shooting investigation;

--What is visible from the different vantage points that Christie Apodaca, the independent neighbor eyewitness, had when she viewed the circumstances before the shooting;

--What the scene photos tell us about the circumstances of the shooting.

Mr. Scott's testimony is essential to assist the trier of fact in understanding the circumstances surrounding the shooting death of Mr. Torres by Detective Brown.  Mr. Scott has evaluated the forensic evidence and identified what scenarios are possible in light of the forensic evidence.  He will explain to the jury what the unchangeable forensic evidence tells us about what could or could not have happened.

Defendant is incorrect in its claim that Mr. Scott's opinions are based on conjecture and are inadmissible under federal case law because such issues as bullet trajectory, angles of views of the witnesses, condition of the gun, retention levels of a gun holster, how a gun is to be carried in a holster carried, how the safety is removed from the gun, the correct way to conduct a shooting investigation and how to find and interview witnesses are things that are learned

through training, experience and expertise.  Most of Mr. Scott's testimony is based on physical evidence gathered by APD and all of his testimony evaluates the forensic evidence in this case.

Defendants incorrectly claim that because Mr. Scott does not make an expert conclusion as to exactly how the shooting occurred, he cannot testify.   Defendants misunderstand the duty of an expert when evaluating forensic evidence.  An expert witness can only testify as to those conclusions that the evidence shows.  Mr. Scott's conclusions are to a reasonable degree of probability even though they do not make the ultimate conclusion as to exactly how the shooting occurred.  He provides the various different conclusions that are possible from the forensic evidence and excludes those scenarios that the forensic evidence demonstrates are not possible.

Defendants' motion cites, but ignores, Tenth Circuit precedent related to the requisite certainty of expert opinions.  In determining whether expert testimony is sufficiently tied to the facts of the case, the Tenth Circuit has held "[a]lthough an expert opinion must be based on 'facts which enable [her] to express a reasonably accurate conclusion as opposed to conjecture or speculation, ... absolute certainty is not required.'"  *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir. 1995) (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 665, 662 (11th Cir. 1998).  Furthermore, an expert may provide the different possible scenarios, even if he/she is unable to reach a final conclusion as to which scenario actually occurred.  In other words, an expert witness may assist the jury by narrowing down the world of possibilities to just those possibilities that the forensic evidence supports.  As long as he can testify to a reasonable degree of certainty that the forensic evidence supports the scenario he says it does, an ultimate conclusion is not required. In fact, in some circumstances, it may not be appropriate.

The Tenth Circuit discussed this principle in *Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643 (10th Cir. 1991).  In *Werth*, plaintiff was injured with a chainsaw manufactured by the

defendants.  *Id.* at 644.  Plaintiffs retained an expert who opined that a product defect contributed to one of three possible scenarios, any of which could have caused the plaintiff's injury.  *Id.* at 651 ("[I]f a riving knife had been on [the Makita saw] it[] would have been, in fact, a barrier and the accident wouldn't have happened, *no matter which of the three reconstructions occurred*.") (emphasis in original).  Plaintiffs appealed the district court's exclusion of this expert testimony as speculative.  *Id.* at 646.  The Tenth Circuit reversed, holding "[Plaintiff's] expert opinion on the defectiveness of the saw *was based on three permissible views of what happened*, all consistent with the evidence presented.  *Id.* at 651 (emphasis added).  The court further held "[w]hile under the Federal Rules of Evidence a district court has substantial discretion in deciding which experts can and cannot testify, the district court may not employ this discretion to restrict viable and relevant theories offered by a party."  *Id.* at 652 (quoting *Graham v. Wyeth Laboratories*, 906 F.2d 1399, 1408–9 (10th Cir.), *cert. denied*, 498 U.S. 981 (1990).

The reasoning of *Werth* and *Graham* is directly applicable to this case.  Mr. Scott has evaluated all available evidence and testimony and concluded that several possible scenarios could have led to the shooting of Mr. Torres by Detective Brown.  Each of the scenarios are "consistent with the evidence presented."  *Werth*, 950 F.2d at 651.  Defendant asserts that in order to be permitted to testify, Mr. Scott must be able to conclude, based on a reasonable probability, what exactly occurred in this case.  Under such a standard, none of the experts in this case would be permitted to testify because no expert can reach just one possible scenario based on the forensic evidence of this case.  Mr. Scott's testimony advances "viable and relevant theories" as to the likely events surrounding the death of Mr. Torres that will assist the trier of fact in this case.  *Id.*

Mr. Scott's testimony is also well-reasoned and properly grounded in the facts of the case. In *New Mexico v. General Electric*, the court articulated the standard for determining relevancy of expert testimony in the context of assisting the trier of fact. *New Mexico v. General Electric, Co.*, 355 F.Supp.2d 1266, 1272 (D. N.M. 2004). Quoting *Daubert*, the court held "Rule 702 … requires that the evidence or testimony assist the trier of fact to understand the evidence or to determine a fact in issue. … This condition goes primarily to relevance. Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* (quoting *Daubert*, 509 U.S. at 591) (internal quotation marks omitted). In short, expert testimony must be based on the expert's analysis of the facts of the case. *See United States v. Downing*, 753 F.2d at 1242 ("An additional consideration under Rule 702–and another aspect of relevancy–is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.").

Mr. Scott's proffered opinions are directly tied to the facts of the case. They are based on the physical evidence gathered by APD and Mr. Scott's experience regarding how certain physical evidence is created and what that indicates to the trier of fact about how the incident transpired. There are only three parties currently alive who witnessed the incident that resulted in Mr. Torres's death. Detectives Hilger and Brown participated, and therefore witnessed, the whole interaction. Mr. Torres's back door neighbor, Christie Apodoca, witnessed portions of the interaction, but did not see the actual shooting of Mr. Torres by Detective Brown. Given significant disparities between the accounts of these witnesses, the forensic evidence is important to evaluate to determine what it tells us and how it fits with the possible scenarios and testimony of the witnesses.

For example, Detective Hilger has testified that Mr. Torres took possession of his weapon and brandished it, forcing Detective Hilger to press his hand with all of his body weight on the gun forcing it to the rock covered ground.  In response to this testimony, Mr. Scott evaluated both the APD firearms examiner's report (made post-incident) and photographs of the weapon involved.  The firearms examiners report indicated normal wear present on the weapon. Similarly, Mr. Scott concludes that there is none of the type of damage that would be expected from a gun of that type being pushed into and rubbed around in rocks and on concrete with the force of an officer pushing down on it.

"An expert's opinion must be based on factual assumptions that have some support in the record."  *Meredith v. Schreiner*, 1992 WL 223760 * 2 (D. Kan. Aug. 11, 1992) (citing *Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 648 (10th Cir. 1991). Here, Mr. Scott has reviewed the firearm examiner's report and photographs of the weapon in formulating his opinion that it is unlikely that the gun was forced into loose rocks by the strength and weight of Detective Hilger.

Whether or not the weapon was pressed into the ground is a matter of fact for the jury to determine in this case.  *See Stanolind Oil & Gas Co. v. Kimmel*, 68 F.2d 520, 522 (10th Cir. 1934) ("It is the province of the jury, and not the court, to weight the evidence, and, where there is a conflict, decide that which it would believe.")  However, Mr. Scott's (1) qualifications as an expert, and (2) comprehensive review of the evidence allow him to offer his opinion as to what would normally be expected in this scenario, whether guns will scratch when pressed into rocks, and the normal course of investigation under similar circumstances.

Mr. Scott's opinions are based on objective review of the available evidence, as well as his experience and training in law enforcement.  This evidence indicates to Mr. Scott, an expert in the field, the possible different sequences of events that led to Mr. Torres death.  As such, Mr.

Scott's testimony will assist the trier of fact in determining the factual issues in this case. Attacks presented by Defendants as to the plausibility of Mr. Scott's opinions in this case go to the weight rather than the admissibility of his testimony. Therefore, Mr. Scott's opinion testimony will assist the Court in determining issues of fact and should be admitted.

II. **MR. SCOTT'S TESTIMONY NEITHER QUESTIONS THE CREDIBILITY OF DEFENDANTS' WITNESSES NOR USURPS THE FUNCTION OF THE JURY TO WEIGH THE EVIDENCE AND DETERMINE THE CREDIBILITY OF WITNESSES.**

A. **Mr. Scott Does Not Opine on the Credibility of Any of the Witnesses in this Case as Asserted by Defendants.**

Plaintiffs agree that expert witnesses may not comment on the credibility of witnesses. *U.S. v. Adams*, 271 F.3d 1236, 1245 (10th Cir. 2001). Mr. Scott does not intend to comment upon the credibility of the witnesses in this case. Instead, he intends to testify about what the physical evidence tells us about the scenarios that could have occurred. For example, his testimony that it is not likely that the gun was pushed into and waved around in a pile of rocks because the forensic evidence on the gun reveals no scratches as would be expected is not a comment on the credibility of the officers who claim the gun was pushed around in a pile of rocks. It is, instead, a comment on the physical evidence and what it shows, ie. that it was undamaged, whereas a gun that had been waved around in rocks would have been scratched. While a jury may conclude that the officers are not telling the truth based on the physical evidence as demonstrated by Mr. Scott, Mr. Scott's expert testimony is not a commentary on the credibility of the witnesses.

At no point in his report does Mr. Scott state that any witness "is lying or telling the truth." **Motion No. III at 10.** [Doc 101] The following exchange during Mr. Scott's deposition testimony accurately summarizes the nature of Mr. Scott's expert report and testimony.

> Q: In fact, [your conclusions] are all possible scenarios.  Would you agree with that?
> A: That's correct.
> Q: They are not offered as any sort of probability that they likely occurred?
> A: Well, there's testimony.  Again, I don't determine the credibility of witnesses.

**(Ex. C, Scott Depo. 137:20–25, 138:1)**

Mr. Scott's presentation of an alternate plausible scenario is not a commentary on whether or not the jury should believe the officers who testify to different scenarios.  Instead, he offers his explanation of the physical evidence and leaves to the jury the credibility of the witnesses.  Therefore, Defendants' motion to exclude the testimony of Mr. Scott must be denied.

**B.  Mr. Scott's testimony does not Usurp the Role of the Jury as the Finder of Fact.**

Mr. Scott's testimony related to deposition testimony and evidence in this case is proper as noted in case law cited by Defendants in their motion.  *See U.S. v. Ward*, 169 F.2d 460, 462 (3rd Cir. 1948) ("[I]t can scarcely be gainsaid that voluminous records may be summarized, or that an expert may interpret and explain certain evidence in the case and on the basis of such evidence perform tasks beyond the training and experience of the layman juror.").  In *Ward*, the court excluded expert testimony given the expert's attempt to "more than summarize the evidence.  From materials and information extraneous to the record he confessedly determined the accuracy of evidence already in the case, and eliminated the inaccurate evidence as well as the testimony of witnesses regarded by him as uncertain."  *Id*.  (internal quotation marks omitted).

It cannot be seriously contended that Mr. Scott has inappropriately "determined the accuracy of evidence" or discounted "the testimony of witnesses regarded by him as uncertain." *Id.*  Instead, Mr. Scott's deposition testimony repeatedly reveals his recognition that his opinions must be evaluated by the jury in light of all evidence and testimony presented.  **Ex. C, Scott**

Depo. 117:19–22 ([T]here's some issues here that involve differences in the version of events and this is really something that needs to be determined by the finder of fact."); **Ex. C, Scott Depo. 137:5–9** ("I need to present to the finder of fact other possibilities, just possibilities that may have happened.  And it is for them to decide what possibility is or is not – it's for the finder of fact to find the truth."); **Ex. C, Scott Depo. 138:16–17** ("That's for the finder of fact to determine, correct."); **Ex. C, Scott Depo. 150:15–18** (The veracity of those statements in correlation with the evidence, of course, will be something that at a later time the finder of fact will decide…").

Similarly, Mr. Scott's observation that differences exist between the testimony of Detectives Hilger and Brown does not determine the accuracy of the evidence in a manner that could usurp the role of the jury.  Differences in the testimony of Detectives Hilger and Brown are simply a consideration in the formation of Mr. Scott's opinions in this case.  These differences make it impossible that both versions are correct.  The same is true as to discrepancies between the testimony of Detectives Hilger and Brown and Ms. Apocaca.  These inconsistencies are properly left to the jury to resolve.  However, Mr. Scott's testimony revealing and opining on these inconsistencies does not usurp the role of the jury as the finder of fact.  Therefore, Defendants' motion to exclude the testimony of Mr. Scott must be denied.

## III.    MR. SCOTT'S TESTIMONY IS RELEVANT AND NOT CUMULATIVE

### A.  **Shooting Reconstruction Testimony by Mr. Scott is Non-Cumulative and is Admissible Under Federal Rule of Evidence 403.**

Mr. Scott should be able to testify that Mr. Torres was shot point blank in the back and what that evidence tells him about the circumstances surrounding the shooting.  Defendants claim that conclusions drawn by Mr. Scott present irrelevant and/or cumulative information to the jury under Federal Rule of Evidence 403.  Rule 403 states "[t]he court may exclude relevant

evidence if its probative value is **substantially** outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403 (emphasis added).  The fact that Detective Brown shot Christopher Torres by pushing the barrel of his gun into his back and firing three times is highly probative of the factual issues of whether the officers used excessive force against Mr. Torres.  Since Officer Brown shot Christopher Torris in the back at contact range, the jury may conclude that Officer Brown had control over him and that he was not a threat to them.

The fact that OMI pathologists will confirm that their examination of Mr. Torres's body revealed an imprint of the gun on Mr. Torres's back around each of the three bullet entry wounds does not cause Mr. Scott's testimony about what that means to become cumulative.  Instead, Mr. Scott will testify as to his evaluation of this physical evidence and what that means about the circumstances surrounding the shooting.  To the extent that his evaluation of the forensic evidence regarding the burned clothing and the marks of the gun on Mr. Torres's skin support the OMI findings, they are not cumulative, but, instead, based upon a different analysis from police investigator's perspective.

Rule 403 proscribes "needlessly presenting cumulative evidence."  *Id.*  Mr. Scott's reference to record evidence in his expert report is not "needless."  Instead, the facts and evidence in the record have served as the basis for his conclusions to be presented to the jury.  "Evidence is cumulative when it adds very little to the probative force of other evidence in the case."  *U.S. v. Gardner*, 211 F.3d 1049, 1055 (7th Cir. 2000).

Here, Defendants claim that allowing Mr. Scott to offer an opinion as to the position of Detective Brown's weapon when he shot Mr. Torres would be cumulative evidence given that

this information also appears in the OMI report.  This claim must fail under the analysis provided in *Gardner* given that Mr. Scott's use of the record evidence serves a non-cumulative purpose. The OMI witness will testify that there was burning of the skin around the entry wounds on Christopher Torres's back that indicate that the gunshots were contact wounds.  Mr. Scott will testify that the burning of Christopher's clothing support this conclusion, which is a different analysis than is provided by OMI.

Given the probative value of expert testimony as to the position of Detective Brown's weapon at the time that he shot Mr. Torres, and federal jurisprudence on Rule 403, it cannot be said that the danger of providing cumulative evidence to the jury **substantially** outweighs the probative value of Mr. Scott's testimony.  Furthermore, the testimony is not cumulative, but merely supplements the OMI finding about the condition of Christopher Torres's skin. Therefore, Plaintiff respectfully requests that this Court deny Defendant's motion to exclude Mr. Scott's testimony on this topic.

### B.   Shooting Incident Investigation Testimony by Mr. Scott is Relevant, Non-Cumulative, and Admissible Under Rules 403 and 401.

As discussed above, Mr. Scott's expert opinions as to the appropriateness of Albuquerque Police Department's investigative techniques is not cumulative simply because the investigative procedures undertaken are addressed in record evidence.  Mr. Scott's testimony related to APD investigative procedures directly supports his opinion that it is possible that Mr. Torres never had possession of Detective Hilger's weapon and increases the probative force of other evidence in the trial.  *See id.* ("Evidence is cumulative when it adds very little to the probative force of other evidence in the case.").  As such, Mr. Scott's testimony as to the investigative procedures undertaken by the Albuquerque Police Department is admissible under Rule 403.

Defendant also claims that Mr. Scott's opinions as to investigative procedures are irrelevant to Plaintiff's case.  Testimony is relevant when it (1) has any tendency to make a fact more or less probable than in would be without the evidence and, (2) the fact is of consequence in determining the action.  Fed. R. Evid. 401.

No latent fingerprint analysis was undertaken to determine whether Mr. Torres's fingerprints were on Detective Hilger's weapon, despite testimony by Detective Hilger that Mr. Torres took possession of the weapon.  Mr. Scott's offered opinion that additional investigative procedures were available and should have been undertaken is probative to the issue of whether Mr. Torres ever had possession of the weapon.  Mr. Scott's testimony is relevant under Rule 401 and must be properly admitted.

Therefore, Plaintiff respectfully requests that this Court deny Defendant's motion to exclude Mr. Scott's testimony on this topic.

## CONCLUSION

For the reasons stated more particularly herein, Plaintiffs request that the Court deny Defendant's Motion and allow Mr. Scott to testify at trial.

Dated: February 28, 2014                          Respectfully submitted,



*/s/ Kathleen J. Love*
Kathleen J. Love
Randi McGinn
McGinn, Carpenter, Montoya & Love, P.A.
201 Broadway Blvd., SE
Albuquerque, NM 87102
Phone: (505) 843-6161
Fax: (505) 242-8227
*Attorneys for Plaintiffs*

17

I hereby certify that on this,
the 28th day of February, 2014,
a true and correct copy of the
foregoing pleading was served
electronically via CM/ECF to
all counsel of record


***/s/ Kathleen J. Love*** _____