IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

STEPHEN TORRES, as Personal Representative
of the Estate of CHRISTOPHER TORRES,
deceased,

      Plaintiff,

v.                                                                         No. CIV 12-1048 RB/KBM

CITY OF ALBUQUERQUE, ex rel.
ALBUQUERQUE POLICE DEPARTMENT,
CHRISTOPHER BROWN, and RICHARD
HILGER,

      Defendants.

## MEMORANDUM OPINION AND ORDER

Two parties in this case, Plaintiff Stephen Torres and Defendant City of Albuquerque, have filed cross motions for preclusion. (Docs. 211, 212.) Having reviewed the parties' submissions and arguments, the Court **GRANTS** Plaintiff's motion and **DENIES** Defendant's motion.

### I.    BACKGROUND

Plaintiff's son, Christopher Torres, died during an interaction with two Albuquerque Police Department Officers. On June 28, 2011, acting as the personal representative of his son's estate, Plaintiff filed an action in New Mexico state court ("*Torres I*") alleging battery, unreasonable seizure, and negligent hiring, training, and supervision under New Mexico law. (*Torres I* Compl., Doc. 212-1.) The only defendant in the state case was the City of Albuquerque. (*Id.*)

After more than a year of discovery in *Torres I*, Plaintiff filed a parallel action with this Court on October 9, 2011. (Compl., Doc. 1.) The federal Complaint names the Defendant City of Albuquerque ("the City"), its Police Department, and the two officers involved in the incident, Defendant Officers Christopher Brown and Richard Hilger. (*Id.*) The federal case involves three federal claims: a violation of the Americans with Disabilities Act ("ADA") claim against the Police Department; an excessive force claim against the two officers; and an unconstitutional custom and policy claim against the City. (Compl. ¶¶ 58-86.) Until the moment the Court *sua sponte* considered staying the case, the Defendants vigorously defended the suit. Defendants filed six motions for partial summary judgment and eleven motions in limine. (Docs. 99-102, 104-109, 197-203.)

Upon its own motion, the Court asked the parties whether the federal case should be stayed pending the outcome of the state court case. (Doc. 204.) The parties jointly agreed that it should. (Doc. 206.) Accordingly, the Court stayed the federal action on June 26, 2014, and ordered the parties to file motions for claim or issue preclusion within 14 days of the state court's final judgment. (Doc. 207.)

On June 10, 2014, the New Mexico district court judge, the Honorable Shannon Bacon, found the City liable for the battery claim. (*Torres I* Findings of Fact & Conclusions of Law ("Findings") ¶¶ B, L.) The court found that the two officers committed battery against Christopher Torres. (*Id.* ¶¶ 85-87.) Holding the City liable under *respondeat superior* for the battery claim, the court assessed over $6,000,000 in compensatory damages against the City. (*Id.* ¶ 90.) Determining that the City's hiring and training of the two officers comported with New Mexico statutory law (*Id.* ¶¶ 91-111), the court dismissed the claims for negligent

supervision, hiring and training. (*Torres I* Order, Doc. 212-3.) In its Findings, the state court reserved several questions for this Court, in "the parallel federal case." (*Torres I* Findings at 1.)

Within a week of the state court's final judgment in *Torres I*, this Court held a mediation. (Doc. 209.) Following the mediation, both parties agree that the claims against the Defendant Officers are not subject to any preclusive effect because the officers were not party to the original case. (Doc. 211 at 11; Doc. 212 at 8.) The Court accepts this argument. *See Taylor v. Sturgell*, 553 U.S. 880, 884 (2008) ("It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940))). The parties were unable to come to any agreement on how the prior suit affected Plaintiff's claims against the City in this action. Accordingly, the Court asked the parties to brief the preclusion issue.

Both Plaintiff and the City filed motions for preclusion. (Docs. 211, 212.) The City argues that the state court's ruling on negligent hiring, firing and supervision is entitled to preclusive effect under either the doctrine of claim or issue preclusion. (Doc. 212.) Plaintiff claims that he is entitled to offensive issue preclusion on the issue of compensatory damages against the City. (Doc. 211.) The Court now analyzes the two motions.

## II.     LEGAL STANDARD

By preventing "parties from contesting matters that they have had a full and fair opportunity to litigate," the preclusion doctrine "protects [against] the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action

3

by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-54 (1979). Preclusion can take the form of either claim preclusion or issue preclusion.[1]

Congress expressly mandated that federal courts give preclusive effect to valid state court judgments. *See* Full Faith and Credit Act, 28 U.S.C. § 1738. To evaluate the preclusive effect of a state court judgment, a federal court must look to that state's law. *See id.*; *see also Lance v. Dennis*, 546 U.S. 459, 466 (2006). Here, the Court must apply New Mexico law. New Mexico courts' treatment of preclusion is similar to the federal standards. *See Potter v. Pierce*, 342 P.3d 54, 57 (N.M. 2015) ("Federal law and New Mexico law are consistent on the general standards governing claim preclusion.").

Claim preclusion "forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Taylor*, 553 U.S. at 892 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). In New Mexico, a party asserting claim preclusion must establish:

> [T]hat (1) there was a final judgment in an earlier action, (2) the earlier judgment was on the merits, (3) the parties in the two suits are the same, and (4) the cause of action is the same in both suits.

*Potter*, 342 P.3d at 57 (citing *Kirby v. Guardian Life Ins. Co.*, 231 P.3d 87, 105 (N.M. 2010)). "The decision rests on the prior opportunity to litigate, and neither the type of proceeding nor the damages sought are determinative." *Id.*

On the other hand, issue preclusion "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor*, 553 U.S. at 892 (quotations

---

[1] Preclusion is sometimes referred to as *res judicata*. This Court will apply the terms "claim preclusion" and "issue preclusion" as opposed to the "more confusing lexicon" of merger, bar, res judicata, and collateral estoppel. *See Taylor*, 553 U.S. at 892 n.5 (2008).

omitted"). Thus, unlike claim preclusion, issue preclusion "does not require that both suits be based on the same cause of action." *Deflon v. Sawyers*, 137 P.3d 577, 582 (N.M. 2006) (quoting *Adams v. United Steelworkers of Am.*, 640 P.2d 475, 479 (N.M. 1982)). New Mexico recognizes both offensive and defensive issue preclusion. *Shovelin v. Cent. N.M. Elec. Co-op.*, 850 P.2d 996, 1000 (N.M. 1993). In New Mexico, a party asserting issue preclusion must show that (1) the adversely affected party was a party to the prior litigation, (2) the two causes of action are different, (3) the issue was actually litigated in the prior litigation, and (4) the issue was necessarily determined in the prior litigation. *Ideal v. Burlington Res. Oil & Gas Co. LP*, 233 P.3d 362, 365-66 (N.M. 2010). The Court must also determine if the adversely affected party had a full and fair opportunity to litigate the issue in the prior proceeding. *Shovelin*, 850 P.2d at 1000; *see also Deflon*, 640 P.2d at 583 ("The main concern is that a party against whom collateral estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior action.").

If either form of preclusion applies, the Court will grant partial summary judgment in the movant's favor. *See Matosantos Commercial Corp. v. Applebee's Int'l, Inc.*, 245 F.3d 1203, 1205 (10th Cir. 2001) (affirming grant of summary judgment based on preclusion). To prevail on a motion for summary judgment, the party arguing preclusion has the burden. *Id.* at 1211; *see also Silva v. State*, 745 P.2d 380, 384 (N.M. 1987).

### III. DEFENDANT'S MOTION FOR PRECLUSION

In the prior state court action, Plaintiff tried a claim under New Mexico law alleging that the City was liable for the negligent hiring, training, or supervision of the two officers. (*Torres I* Compl.). In the current action, among other claims, Plaintiff brings two Section 1983 municipal liability claims alleging that the City is liable for unconstitutional customs and policies, including

the City's policy and practice of inadequate training and its culture of excessive force. (Compl. 58.) The City argues that Plaintiff's Section 1983 municipal liability claims are barred under either claim or issue preclusion.

### A. Claim Preclusion

The City first argues that Plaintiff's municipal liability claims are barred under the doctrine of claim preclusion. Three of the four prongs of the claim preclusion test are indisputably met: the state court action concluded in a final judgment on the merits between Plaintiff and the City. The parties dispute the fourth prong: whether the cause of action is the same in both suits.

To determine if two suits involve the same cause of action, New Mexico applies the transactional approach. *Potter*, 342 P.3d at 57. As outlined in the Restatement (Second) of Judgments, the transactional approach analyzes whether, practically speaking, the claims are (1) related in space, time, origin, or motivation, (2) whether they form a convenient trial unit, and (3) whether treating the claims together would be consistent with the parties' expectations. *Id.*

The City argues that Plaintiff's negligent hiring, training, and supervision claim is necessarily part of the same cause of action as Plaintiff's custom or policy claims. (Doc. 212 at 14.) As the City correctly argues, Plaintiff could have brought the Section 1983 claims against the City in the first action because state courts have concurrent jurisdiction over such claims. *Carter v. City of Emporia*, 815 F.2d 617, 621 (10th Cir. 1987). Because a plaintiff may bring Section 1983 claims to state court, the Supreme Court held that federal courts should give a preclusive effect to prior state-court judgments where a plaintiff could have raised a Section 1983 claim, but did not. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 85 (1984).

To analyze New Mexico law, the City relies on a Tenth Circuit case which considered the preclusive effect of a New Mexico state case. (Doc. 212 at 16-18.) In *Strickland v. City of Albuquerque*, the plaintiff first filed suit in state court to challenge his termination and the merit board's affirmation of his termination. 130 F.3d 1408, 1410 (10th Cir. 1997). Subsequently, the plaintiff filed suit in federal court claiming that the drug testing that precipitated his termination violated his Fourth and Fourteenth Amendment rights. *Id.* Although the plaintiff's constitutional claims were not raised in the earlier suit, the Tenth Circuit affirmed that the plaintiff's federal suit was barred by his state judgment. *Id.* at 1411. Noting that both claims were intended to challenge the plaintiff's wrongful discharge, the Circuit found that the two sets of claims were "almost identical" in terms of time, space, and origin. *Id.* at 1412. The Circuit further found that there was a "substantial, if not complete, overlap in terms of the witnesses and proof relevant to both actions." *Id.* The Circuit was unmoved by the plaintiff's argument that litigating the claims separately was more convenient because the state court action was styled as a review of the merit board decision, not a *de novo* challenge. *Id.* at 1412 & n.4. Ultimately, the Circuit held that "New Mexico rules against claim splitting required" the plaintiff to bring his Section 1983 claims in the earlier suit. *Id.* at 1413. Defendant suggests that the circumstances in *Strickland* are the same as the circumstances in the present case. (Doc. 212 at 16-18.)

Plaintiff counters that the two suits do not involve the same cause of action because the municipal liability "transaction" happened before Christopher Torres was shot. (Doc. 214 at 5.) To support his point, Plaintiff relies on a New Mexico Court of Appeals case. (*Id.* at 6.) In *Anaya v. Albuquerque*, a plaintiff who was terminated after failing a drug test filed a multi-plaintiff action, in conjunction with six other plaintiffs, claiming that the city's adoption of drug

7

abuse policies violated the Open Meetings Act. 924 P.2d 735, 737 (N.M. Ct. App. 1996). After the case was dismissed, the plaintiff brought an individual suit challenging his termination. *Id.*

The Court of Appeals in *Anaya* ruled that the plaintiff's constitutional and breach of contract claims were not precluded by the earlier suit. *Id.* at 741. To fully examine the preclusive effect of the first suit, the Court of Appeals held that it needed to "go beyond any similarity in desired outcome and . . . examine the operative facts underlying the claims made in the two lawsuits." *Id.* at 738 (citing Wright & Miller for the proposition that the "single legal wrong" phrase "should be discarded"). First, the Court of Appeals noted that the proof for the statutory Open Meetings Act claim was different than the proof needed for the breach of contract and constitutional claims. *Id.* at 739. Second, the Court of Appeals reasoned that the two cases would not have made a convenient trial unit because the Open Meetings Act case was a multi-plaintiff case and pursuing individual plaintiffs' claims would have been "complex" and "unnecessary." *Id.* at 740. Third, the Court of Appeals determined that the defendants did not necessarily or reasonably expect the second case to be precluded when it was filed. *Id.* Plaintiff argues that his case is similar to *Anaya* in that the specific injury to the plaintiff was a different cause of action than "the policy environment that led it." (Doc. 214 at 9.)

The Court tends to agree with Defendant that the two claims encompass the same transaction. While the Section 1983 custom and policy claim may have made a less-than convenient trial unit with the battery claim, Plaintiff also brought negligent hiring, training, and supervision claims against the City in the first suit. The municipal liability claims could have been conveniently tried with the negligent hiring, training, and supervision claims. Practically speaking, whether the City has a custom and policy of inadequate training and condoning excessive force will overlap in time with the question of the two officers' training. Many of the

8

witnesses who could speak to the two officers' training in the state case would likely speak about training practices in the federal case. Moreover, the driving question is whether plaintiff had "the prior opportunity to litigate." *See Potter*, 342 P.3d at 59 (finding that the plaintiff's bankruptcy fee proceeding barred his later malpractice claim in state court). The Court need not expressly rule on this issue, however, because Plaintiff raised two defenses which bar the application of claim preclusion in this instance.

First, Plaintiff argues that because Defendants acquiesced to splitting the claims, claim preclusion should not apply. (Doc. 214 at 10.) The New Mexico Court of Appeals explained the foundation of this exception in *Concerned Residents of Santa Fe v. Santa Fe Estates, Inc.*, 182 P.3d 794, 801 (N.M. Ct. App. 2008). The starting premise is that the New Mexico Supreme Court expressly adopted the rule against claim splitting as stated in the Restatement (Second) of Judgments section 24 in *Three Rivers Land Co. v. Maddoux*, 652 P.2d 240, 245 (1982). In turn, Restatement section 24 incorporates section 26, which lists exceptions to traditional claim preclusion. The first listed exception is: "The parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein." Restatement (Second) of Judgments § 26(1)(a). Based on this, the Court of Appeals ruled that "[a]cquiescence will defeat a res judicata defense." *Concerned Residents*, 182 P.3d at 802 (collecting federal cases for the same proposition). According to the Restatement comments, if a defendant does not raise a claim preclusion defense in a second suit until after the first suit has reached a judgment, then the defendant has "consented in effect to the splitting of the claim." Restatement (Second) of Judgments § 26 cmt. a.

In *Concerned Residents*, the Court of Appeals found that the defendant had acquiesced to claim splitting where (1) the defendant actively litigated both suits, and (2) the defendant did not

9

pursue the claim preclusion defense until a year and two months after the second suit was filed. *Id.* at 802, 804. The defendant raised res judicata in its answer, but simply raising the defense in an answer was insufficient, according to the Court of Appeals. *Id.* at 802. The Court of Appeals ruled that "[i]f a defendant sees two actions as detrimental to the defendant's interests, it should be incumbent on the defendant to specifically attack the claim-splitting by obtaining court relief at the earliest feasible point." *Id.* at 805.

Here, similar to the defendant in *Concerned Residents*, the City acquiesced to splitting the claims. The City actively litigated both the state court suit and this federal suit for over a year and seven months. (Compl., Oct. 9, 2012; Mot. to Stay, June 3, 2014.) That is two months longer than the defendant in *Concerned Residents*. 182 P.3d at 802. The City litigated the federal suit vigorously. During the course of the federal litigation, the City and Defendants filed six motions for partial summary judgment and eleven motions in limine. (Docs. 99-102, 104-109, 197-203.) Furthermore, unlike the defendant in *Concerned Resident*, the City never raised a claim preclusion defense of its own. The Court *sua sponte* raised the claim preclusion issue and requested briefing. (Doc. 204.) Given these facts, the Court agrees that the City acquiesced to splitting these claims. The rule against claim-splitting "exists, after all, primarily for the protection of a defendant" to help relieve "the burdens of multiple litigation of the same claims, including unnecessary expense and the possibility of inconsistent results." *Concerned Residents*, 182 P.3d at 805. When a defendant effectively agrees to spend resources on two simultaneous actions, then the policy underlying claim preclusion has lost its mooring.

Second, the Plaintiff argues that claim preclusion does not apply because the state court judge expressly reserved claims for the future litigation. (Doc. 214 at 13.) This argument is again grounded in Restatement section 26. The second exception is: "The court in the first

action has expressly reserved the plaintiff's right to maintain the second action." Restatement (Second) of Judgments § 26(1)(b). If the first judge reserves or sets asides omitted claims for a future litigation in "the findings of fact, conclusions of law, opinion, or similar record," the second court "should ordinarily" give effect to the reservation. Restatement (Second) of Judgments § 26 cmt. b. Several New Mexico Courts of Appeal have recognized the validity of this exception. *See, e.g.*, *Moffat v. Branch*, 118 P.3d 732, 740 (N.M. Ct. App. 2005); *Apodaca v. AAA Gas Co.*, 73 P.3d 215, 240 (N.M. Ct. App. 2003).

In the Findings, the Honorable Judge Bacon stated that she was not considering several "matters which are reserved for decision in the parallel federal case," including:

> [W]hether APD had or condoned an official policy, custom, or practice of unconstitutional misconduct by its employees; . . . whether APD management exhibited deliberate indifference to or tacit approval of unconstitutional misconduct or use of excessive force by its officers; . . . [and] whether the training and supervision by APD management rose to the level of deliberate indifference. . . .

(*Torres I* Findings, Ex. E, Doc. 212-5.) All three issues directly implicate Plaintiff's Section 1983 municipal liability claims. The City offers no reasons why this Court should not give effect to Judge Bacon's ruling that these claims were reserved for this Court. Based on this reservation, claim preclusion should not apply here.

The City does not substantively respond to Plaintiff's acquiescence or reservation arguments. The City only commented that "Defendants are not all convinced that claim preclusion should not apply under these circumstances simply because . . . Defendants respected [Plaintiff's forum choice] decision." (Doc. 218 at 2.) The City has the burden to prove that claim preclusion applies here. *See Silva*, 745 P.2d at 384. Their disagreement with the law does not defeat the two valid exceptions to claim preclusion. Given the judge's express reservation of the claims for future litigation, the City's active litigation of the split claims, and the City's delay

11

in arguing claim preclusion, claim preclusion should not apply to Plaintiff's claim. The Court declines to bar Plaintiff's claim under the doctrine of claim preclusion.

### B. Issue Preclusion

In the alternative, the City claims that Plaintiff's municipal claims should be barred by issue preclusion. (Doc. 211 at 20.) In this action, Plaintiff's Complaint states two theories for municipal liability. In the first instance, Plaintiff claims that the City's police force had a culture of excessive force that was so widespread that it amounted to a standard operating procedure within the City. (Compl. ¶¶ 58-59.) Under the second theory, Plaintiff alleges that the City inadequately trained and supervised its officers with a deliberate indifference to the risk that officers could violate people's rights. (Compl. ¶¶ 58, 60-64.)

Similar to the claim preclusion analysis, some of the issue preclusion factors are not in dispute. Plaintiff was a party to the prior litigation. Also, this is a separate action not barred by claim preclusion. *See Silva*, 745 P.2d at 382 ("When the duty sued upon stems from different roots in the prior and subsequent actions, even if both actions involve essentially the same course of wrongful conduct, it is indicated that the suits arise from different causes of action."). The questions here are whether Plaintiff's municipal liability claims were actually litigated and necessarily determined as part of the state case. In the state case, the Plaintiff claimed that the City was liable under state law for the negligent hiring, training, and supervision of the two officers. (*Torres I* Compl., Doc. 212-1 ¶¶ 32-38.) The state court determined that the City's hiring and training of the two officers comported with New Mexico statutory law (*Torres I* Findings ¶¶ 91-111) and entered judgment for the City on that claim. (*Torres I* Order, Doc. 212-3.)

Plaintiff argues that the ultimate issues for his municipal liability claims were neither actually litigated nor necessarily determined in the state case. (Doc. 214 at 16-17.) First, in its Findings, the state court stated that it was "not considering or deciding" several legal questions which go to the heart of municipal liability claims. (*Torres I* Findings at 1.) Second, Plaintiff argues that the scope of the two claims are different. (Doc. 214 at 16.) While the state case focused on the hiring and training of two officers, the federal claims examine the police department as a whole. (*Id.*) Third, Plaintiff argues the critical legal questions in the two claims are different. For a municipal liability claim, the question is whether the City's official policies or programs inflicted injury on the decedent by depriving him of his rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) ("[W]hen execution of a government's policy or custom . . . inflicts the injury [then] the government as an entity is responsible under § 1983."). For the state claim of negligent hiring, training, and supervision, the guiding question was whether the City breached its duties under state law. *See Schear v. Bd. of Cnty. Comm'rs*, 687 P.2d 728, 733 (N.M. 1984) (stating the elements of a negligent hiring, training, and supervision). Plaintiff considers the two issues "simply too different." (Doc. 214 at 17.)

The City's issue preclusion argument requires two steps. To start, the City compares the state of mind requirement for the state law negligence claim to the requirement for the municipal liability claim. (Doc. 218 at 3.) For a municipal liability claim of inadequate training or supervision, a plaintiff needs to prove that the municipality actions showed a "deliberate indifference to the constitutional rights" of the plaintiff. *City of Canton v. Harris*, 489 U.S. 378, 392 (1989). A showing of negligence, no matter how reckless, is insufficient to hold a municipality liable. *Id.* Practically speaking, the City argues, if the Plaintiff could not prove that the City was negligent in its hiring and training of the two officers, then the Plaintiff cannot show

13

that the City was deliberately indifferent when it trained and supervised the two officers. (Doc. 218 at 4.) If Plaintiff cannot show that the City was deliberately indifferent, then the City is not liable for inadequately training and supervising the officers.

In the second step, the City posits that because Plaintiff cannot prove that the City was liable for inadequately training the two officers, Plaintiff's claim will fail on proximate cause. (Doc. 218 at 5-6.) In order to hold the City liable, Plaintiff must show there was a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton*, 489 U.S. at 385. Here, the actions of the two officers were the but-for cause of the decedent's alleged constitutional deprivation. But, as the City argues above, it cannot be held liable for the inadequate training and supervision of the two officers. Thus, the City cannot be causally linked to the decedent's alleged injuries. In that respect, the City argues, it does not matter that the scope of the first suit was limited to the two officers while the federal suit is department-wide. Even if Plaintiff could prove that the City inadequately trained some officers, those officers were not the cause of the decedent's deprivation. Under the City's theory, Plaintiff's claim must fail on proximate causation.

The Court agrees with Defendants that the question of whether the City was negligent under state law for its hiring, training, and supervision has been actually litigated and determined. Plaintiff is estopped from arguing that City's programs and procedures fell below New Mexico's statutory standard. But the question becomes: does that determination extinguish the entirety of Plaintiff's municipal liability claims?

The critical question before the Court is whether the ultimate fact issues for the municipal liability claims are the same issues that were necessarily decided in the first action. *See Silva*, 745 P.2d at 384 (determining that issue preclusion does not apply where the ultimate fact issues

were different). In this suit, the Court will have to determine whether the City's customs and procedures deprived Christopher Torres of his Fourth Amendment rights. This is a separate question from whether the City's hiring and training of the two officers comported with New Mexico statutory law. A finding that the City's policies comported with state statutory law would inform the inquiry into the constitutional question, but it is not dispositive. *See Davis v. Scherer*, 468 U.S. 183, 195 (1984) (holding that state statutes and regulations do not define the contours of federal law for purposes of Section 1983). Under Defendants' argument, so long as the police department's actions met state statutory criteria, they must also meet constitutional requirements. Simply said, that is not true.

The state court's prior findings do not make the Plaintiff's burden any easier. Plaintiff must now show that, despite the fact that the City's hiring and training practices comported with state law, these customs and policies deprived Christopher Torres of his rights. Although this makes the Plaintiff's burden heavier, the Court cannot say that the state court's findings preclude Plaintiff's entire claim. Accordingly, Defendants' motion for issue preclusion is denied.

## IV.     PLAINTIFF'S MOTION FOR PRECLUSION

Invoking the doctrine of offensive issue preclusion, Plaintiff claims that the state court's factual determination of the amount of compensatory damages is entitled to preclusive effect in this case. (Doc. 211.) If the requirements of issue preclusion are met, then a state court's findings of fact going to damages are entitled to preclusive effect. *Torres v. Vill. of Capitan*, 582 P.2d 1277, 1281 (N.M. 1978) (holding that issue preclusion applies to findings of fact); *Hyden v. Law Firm of McCormick, Forbes, Caraway & Tabor*, 848 P.2d 1086, 1092 (N.M. Ct. App. 1993) (considering preclusive effect of a business' valuation for damages purposes). The state court determined that the City was liable for $6,018,385.82 in compensatory damages for causing the

wrongful death of Christopher Torres. (*Torres I* Findings ¶ L.) Specifically, the state court found the City liable for $18,385.82 in funeral expenses; $65,564.00 in future lost wages; $367,083.00 in lost household services; $4,567,353.00 for loss of enjoyment of life; and $1,000,000.00 for pain and suffering. (*Id.* ¶ 90.)

Plaintiff argues that issue preclusion applies under black letter law. Just as it was true in Defendants' motion for issue preclusion, there is no question that the City was a party to the prior litigation and that the two causes of action are different. To support the remaining factors, Plaintiff offers evidence that the factual issue was actually litigated in the first action. The state court heard testimony evidence on the issue of damages and City's counsel was present to object. (*Torres I* Tr. 72:4-92:24, Doc. 212 -4.) Prior to the testimony, the City filed a *Daubert* motion to challenge Plaintiff's expert on the value of Christopher Torres' life. (Doc. 211-2.) The state court's Findings reveal that the issue was necessarily determined before the Court awarded Plaintiff damages. (*Torres I* Findings ¶¶ 90, L.) Finally, Plaintiff notes, the City had a full and fair opportutnity to litigate the issue because it had an incentive to vigorously litigate the issue of damages, was not denied any procedural tools, and litigated the case on its home turf. (Doc. 211 at 11.)

The City counters that issue preclusion should not apply on three grounds. First, the City argues that the issue is not the same because the state court's findings were predicated on the two officers' actions and not the City's action. (Doc. 213 at 8.) Technically, the City is correct. The City was held liable under a *respondeat superior* theory, as permissible under New Mexico law. *See Weinstein v. City of Santa Fe*, 916 P.2d 1313, 1318 (N.M. 1996) (holding that a police department and a city could be held liable under *respondeat superior* for the unlawful actions of its officers). The Court does not find this argument persuasive, however, because whether a

16

party is held liable for its direct actions or under *respondeat superior*, the compensatory damages calculus does not change. *Id.*

The City next argues that it should not be held to the previous compensatory damages number because the damages were calculated based on a battery claim, while the City here is liable for inadequate policies. (Doc. 213 at 9.) Defendants argue that "[t]he very nature of compensatory damages is that is seeks to make the Plaintiff whole for a specific wrong." (Doc. 213 at 9.) Plaintiff acknowledges that the state battery claim was different than the current municipal liability claim. (Doc. 216 at 4.) But the causes of action do not have to be same for issue preclusion to apply; only the issues need to be identical. *See Ideal*, 233 P.3d at 365-66 (stating the elements of issue preclusion). Plaintiff further notes that constitutional violations themselves do not have freestanding value, plaintiffs must instead prove that they are entitled to compensatory damages. *See Carey v. Piphus*, 435 U.S. 247, 266 (1978) (noting that damages under Section 1983 must be grounded in proof of injury, not upon the vindication of an "absolute" right).

Compensatory damages under New Mexico tort law are not different than compensatory damages under Section 1983. "[W]hen § 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 (1986). The text of Section 1983 itself gives little guidance on the proper way to evaluate damages. If Section 1983's provisions are "deficient" when it comes to fashioning "suitable remedies and punish[ing] offenses against the law," then a court should look to the law of the state in which it sits. 42 U.S.C. § 1988(a). Not surprisingly, New Mexico's wrongful death law countenances all the forms of damages that the state court assessed in this action. *See* N.M. Stat.

17

Ann. § 41-2-1; *see also Hall v. Stiles*, 258 P.2d 386, 389 (N.M. 1953) ("In death actions, the age, occupation, earning capacity, rate of wages, health, habits, and probable duration of the life are proper elements of inquiry."). The Court sees no reason why the determination of compensatory damages under New Mexico's wrongful death act should be different than the calculation of damages under Section 1983 decided in New Mexico. The issues are the same.

Finally, before applying offensive issue preclusion, the Court must consider if the adversely affected party had a full and fair opportunity to litigate the issue in the prior proceeding. *See Shovelin*, 850 P.2d at 1000. Specifically, the Court must look at "countervailing equities including, but not limited to, prior incentive for vigorous defense, inconsistencies, procedural opportunities, and inconvenience of forum . . . ." *Silva*, 745 P.2d at 384. The Court finds that the Defendant had an incentive, because it litigated the damages issue vigorously. The City filed motions and made objections. (*Torres I* Tr. 72:4-92:24, Doc. 212 -4; Doc. 211-2.) A second factor—the risk of inconsistency—does not favor or disfavor preclusion. Potentially, a jury could calculate Plaintiff's compensatory damages against the Defendant Officers differently than the state court calculated. But in that scenario, the City's municipal liability damage award is either going to be inconsistent with the state court's award or with the Defendant Officers' liability. There is no way to eliminate the risk of inconsistency with or without preclusion. Finally, the forum was not inconvenient for the City and a state court offers parties the full panoply of procedural opportunities.

The City argues, in its third and final argument, that the Court should not apply issue preclusion because the state court permitted evidence from a "value of life" expert, who would not have been permitted to testify in federal court. (Doc. 213 at 11.) The Court recognizes that federal and state approaches to evidentiary issues may differ. However, the Full Faith and Credit

Act does not say that courts should only apply issue preclusion where the state court's rules of civil procedure are identical to the federal standard. Rather, this court must apply New Mexico law when determining the judgment's preclusive effect. Value of life experts are permitted in New Mexico. *See Sena v. New Mexico State Police*, 892 P.2d 604, 611 (N.M. Ct. App. 1995) (permitting evidence regarding the value of life and loss of enjoyment of life). The City's argument does not affect the Court's decision that issue preclusion should apply.

The finding that issue preclusion will apply against the City does not definitively set the damages amount against the City now. The litigation must progress through several more stages before the ruling comes into effect. The Plaintiffs must first show that (1) the Defendant Officers are not entitled to qualified immunity, (2) the Defendant Officers are liable for Christopher Torres' injuries, and (3) the City is liable for Christopher Torres' injuries. Once Plaintiff has established that the City is liable, he will still need to show that the City's deprivation of the decedent's constitutional rights caused specific injuries. *See Memphis Cmty. Sch. Dist.*, 477 U.S. at 307 (holding that Section 1983 damages "must always be designed 'to *compensate persons for injuries* that are caused by the deprivation of constitutional rights.'" (quoting *Carey*, 435 U.S. at 254)). The jury would need to find the City's deprivation caused the decedent's estate to suffer funeral expenses, future lost wages, lost household services, loss of enjoyment of life, and pain and suffering. Only then will the damages amount come into effect. And at that time, the damages amount would be set against the City alone, not the other Defendants.

V.  **CONCLUSION**

Defendants have failed to show that either issue or claim preclusion operate to extinguish Plaintiff's Section 1983 municipal liability claims in this case. On the other hand, Plaintiff

19

successfully argued that the offensive issue preclusion should apply to the compensatory damages calculation. However, that finding will be applied narrowly, as described above.

**THEREFORE**,

**IT IS ORDERED** that:

(1) Plaintiff's motion for issue preclusion (Doc. 211) is **GRANTED**; and

(2) Defendant City's motion for preclusion (Doc. 212) is **DENIED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**