IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

**STEPHEN TORRES, as Personal Representative**
**of the Estate of CHRISTOPHER TORRES, deceased,**

    Plaintiff,

v.                                        **No. CIV 12-1048 RB/KBM**

**CITY OF ALBUQUERQUE**, ex rel.
**ALBUQUERQUE POLICE DEPARTMENT;**
**CHRISTOPHER BROWN; and**
**RICHARD HILGER**,

    Defendants.

## PLAINTIFF'S MOTION FOR TRIAL IN ALBUQUERQUE

Plaintiff Stephen Torres, as Personal Representative of the Estate of Christopher Torres, deceased, through his attorneys, McGinn, Carpenter, Montoya & Love, P.A., respectfully moves this Court pursuant to 28 U.S.C. § 1404(a), to conduct the trial in this matter in Albuquerque. Because Plaintiff originally filed this action in Albuquerque, the trial should be held here, notwithstanding the fact that it has been randomly assigned to a district court seated in Las Cruces.

Alternatively, because actual trial venue is unclear from the federal or local rules, to the extent that the assignment of this case to a district court seated in Las Cruces means that the trial is scheduled to be held in Las Cruces, Plaintiff moves the court to transfer trial in this case from the United States District Court for the District of New Mexico division in Las Cruces to that in Albuquerque. Transfer of venue is proper in this case because the Tenth Circuit factors used to determine whether a venue change is appropriate in a civil action all weigh in favor of continuing

1

the trial or transferring the case to the Plaintiff's choice of Albuquerque as a forum for the upcoming trial.

## ARGUMENT

The transfer of civil actions from the division where it is pending to another division in the same district is governed by 28 U.S.C. § 1404, which provides, "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer a civil action to any other district or division where it might have been brought…" A district court has authority and discretion to transfer a civil action *sua sponte*, 28 U.S.C. §1404(a), or by motion or stipulation of the parties under 28 U.S.C. §1404(b). This includes the authority to order any civil action be tried at any place within the district where it is pending. 28 U.S.C. §1404(c). In determining whether a venue change is appropriate the district court considers the following factors:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp. v. Country Chysler Credit, Inc.,* 928 F.2d 1509, 1516 (10th Cir. 1991). "The 'party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient.'" *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.,* 618 F.3d 1153, 1167 (10th Cir. 2010)(quoting *Scheidt v. Klein,* 956 F.3d 963, 965 (10th Cir. 1992)). Plaintiff easily satisfies his burden of demonstrating that the above factors, as applied in this

case, weigh in favor of granting this request to conduct the trial in the city where it was filed or, if required, transfer trial from Las Cruces to Albuquerque.

### A. Plaintiff's Choice of Forum for Filing Should be Respected

The Plaintiff's choice of forum should "rarely be disturbed." *Scheidt v. Klein,* 956 F.2d 963, 965 (10th Cir. 1992); *see also M.K.C. Equipment Co. Inc. v. M.A.I.L. Code, Inc.,* 843 F. Supp. 679, 683 (D. Kan. 1994)("Generally, the plaintiff's choice of forum is given great deference. The burden on the party seeking to overcome the preference for the plaintiff's chosen forum is significant."). Deference is only diminished where, for example, the plaintiffs do not reside in the chosen forum, *Four Corners Nephrology Associates, P.C. v. Mercy Med. Ctr. of Durango,* 464 F. Supp. 2d. 1095, 1098, (D.Colo. 2006), or where substantial events material to the claims occurred outside the preferred forum. *Employers Mut. Cas. Co.,* 618 F.3d at 1166, 1168; *see also U.S. v. Sommerstedt,* 610 F. Supp. 2d 1311, 1317 (D. N.M. 2009)(stating that plaintiff's "choice of forum weighs heavily in favor of maintaining venue in New Mexico… Because [defendant] chose to [allegedly injure plaintiff] in New Mexico, justice requires him to answer here for his actions.").

Plaintiff, Stephen Torres, his family and his deceased son, Christopher are all long time residents of Albuquerque, New Mexico. The Torres family has lived in Albuquerque and contributed to the surrounding community for years, Mr. Torres as an Albuquerque attorney, and his wife as director of human resources for Bernalillo County. The claims made by the Torres' family are wholly connected to their place of residence and chosen forum of Albuquerque. It is in Albuquerque, where members of the Albuquerque Police Department are hired, trained, and supervised. It is in Albuquerque, at the Torres family home, where Albuquerque Police

Department officers jumped a backyard fence and shot Plaintiff's son. And it is in Albuquerque where Plaintiff's son died as direct result of that shooting. None of Plaintiff's claims are in any way related or connected to Las Cruces. As such, Plaintiff's choice of Albuquerque as a forum weighs heavily in favor of transfer.

### B. Accessibility of Witnesses and Other Sources of Proof

In the Tenth Circuit, "[t]he convenience of witnesses is the most important factor in deciding a motion under § 1404(a)." *Employer Mut. Cas. Co.,* 618 F.3d at 1168. Among considerations when addressing this factor, courts look at (1) the identity and location of witnesses; (2) the materiality of their testimony; and (3) any demonstration such witnesses will be unwilling to come to trial, that deposition testimony would be unsatisfactory, or that compulsory process would be necessary. *Id.* The parties to this case have not yet produced final witness lists. However, based on the Initial Disclosures of witnesses and those that will likely be called in this case, 21 of the plaintiffs' 23 lay and medical witnesses live in Albuquerque and 185 of the 186 witnesses (mostly police officers) identified in the Defendants' Initial Disclosures are based in Albuquerque. Other jurisdictions have applied a "100 mile rule" to evaluate witness convenience, stating "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen AG,* 371 F.3d 201, 204-05 (5th Cir. 2004). Las Cruces is approximately 223 miles and three and a half hours driving distance from Albuquerque. Seven hours of roundtrip travel and possible overnight stay in Las Cruces will greatly inconvenience witnesses, increasing their time away family, places of employment, and other responsibilities in Albuquerque. Not one of the more

than 200 witnesses is based in Las Cruces, New Mexico. Consequently, witness convenience weighs in favor of transferring the forum to Albuquerque.

Further, efficient management of other sources of proof also supports transfer to the Plaintiff's choice of Albuquerque as a forum. All of the Defendants are domiciled in Albuquerque and several of Defendants' expert witnesses are located in Albuquerque, New Mexico. The majority of the remaining proposed expert witnesses for both parties will be traveling to New Mexico from other states. The closest major airport to Las Cruces is the El Paso International Airport, requiring car rental to arrive at the federal courthouse in Las Cruces nearly 52 miles away. Travel to New Mexico through the Albuquerque International Sunport will be more efficient, convenient, and cost effective for these expert witnesses. Lastly, both counsel for Defendants and for Plaintiff are based in Albuquerque. As a result, managing exhibits and resources during trial will be more efficient in Albuquerque than in Las Cruces. This factor weighs in favor of granting Plaintiff's request to transfer trial to Albuquerque.

### C. Cost of Making the Necessary Proof

The cost of making necessary proof also weighs strongly in favor of transfer. "Courts may consider the relative financial hardship to litigants in prosecuting or defending an action in a particular forum." *Costello v. Home Depot U.S.A., Inc.,* 888 F. Supp. 2d 258, 269 (D. Conn. 2012). Litigating this case in Las Cruces would far exceed the cost of litigating in Albuquerque for both parties. As a preliminary matter, counsel for both sides will effectively be required to relocate themselves and members of their staff to Las Cruces for the duration of the trial – a costly endeavor. The Torres family would also need to find housing in Las Cruces if they wanted to attend the trial. Additionally, the costs associated with the attendance of witnesses

alone will be exorbitant for both parties if trial proceeds in Las Cruces. As mentioned above, the majority of the lay witnesses to be called are located in Albuquerque, approximately 223 miles from Las Cruces. Witnesses will need to be reimbursed for travel costs which will necessarily include mileage, but could also include overnight lodging and meal expenditures in Las Cruces. Most importantly, additional distance equates to greater witness inconvenience. *See, supra,* Part B. As a result, this factor weighs in favor of litigating this case in Albuquerque.

    **D. Advantages and Obstacles to a Fair Trial**

No obstacles exist that would deprive Defendants of a fair trial in the Albuquerque division of the United States District Court for the District of New Mexico. While there has been media attention in Albuquerque, Las Cruces and nationally concerning the conduct of the Albuquerque Police Department, including some publicity and stories about this particular case, this attention has not created "presumed prejudice" in the Albuquerque jury pool against either party. Addressing pre-trial publicity as related to venue transfer in the criminal context, the Tenth Circuit has found that prejudice is presumed only where "pretrial publicity is so pervasive and prejudicial that we cannot expect to find an unbiased jury pool in the community." *Goss v. Nelson,* 429 F.3d 621, 628 (10th Cir. 2006). The Tenth Circuit has held that "prejudice will only be presumed where publicity 'created either a circus atmosphere in the court room or a lynch mob mentality that it would be impossible to receive a fair trial.'" *Hale v. Gibson,* 227 F.3d 1298, 1332 (10th Cir. 2000). Merely demonstrating that "all potential jurors knew about the case and that there was extensive pretrial publicity will not suffice to demonstrate that an irrepressibly hostile attitude pervaded the community." *Stafford v. Saffle,* 34 F.3d 1557, 1567 (10th Cir. 1994). In fact, courts have consistently reiterated that potential jurors are not expected to be

ignorant of the facts surrounding a case. *Goss,* 439 F. 3d at 627. "Rather, jurors are sufficiently impartial under constitutional standards if they can lay aside any preconceived opinion regarding the outcome of the case and 'render a verdict based on the evidence presented in court.'" *Id.* (quoting *Irvin v. Dowd,* 366 U.S. 717, 723 (1961)). Presumed prejudice is "rarely invoked and only in extreme circumstances." *Stafford,* 34 F.3d at 1566; *see also Goss,* 439 F.3d at 628 (noting that the Supreme Court has only found presumed prejudice based on pretrial publicity in three cases, the most recent in 1966).

The Tenth Circuit in *Goss v. Nelson* demonstrated how high this standard is by affirming the trial court's decision to deny the criminal defendant's request to change trial venue based on local, regional and statewide pre-trial press coverage and community sentiment. *Id.* at 624. The court acknowledged that the victim's murder and subsequent manhunt for the defendant generated "substantial press coverage and community interest." *Id.* at 630. The murder occurred in a sparsely populated area (1,800 in the town; 5,000 in the county), was the first murder in seventy years, the victim was a member of a well-recognized local family, and several residents directly participated in the manhunt for the defendant prior to arrest. *Id.* Despite this, the court found that, while the level of publicity at the time pertaining to the defendant's case was "extraordinary," the publicity had dissipated with time and no article had been published within the seven months preceding trial. *Id.* at 630, 632. Moreover, while there was wide geographic distribution of the news coverage, there was no evidence these publications were read in the defendant's county, and most were predominately factual and non-inflammatory. *Id.*

Similarly here, the limited pre-trial publicity in this case does meet the high hurdle set by the U.S. Supreme Court and affirmed by the Tenth Circuit. As in *Goss,* Christopher Torres's

7

shooting death generated local attention with commentary supportive and critical of both sides, large in part because of a systemic concern about use of force by Albuquerque Police Department officers, rather than the specific details of this case. In the aftermath of the shooting, local media attention surrounding this case dissipated, re-surfacing only when the state trial court announced its ruling in June of 2014. While police use of force has been a subject of national media attention, particularly in the wake of the recent Baltimore Police inquiry into the death of Freddie Gray, recent local media coverage in Albuquerque and Las Cruces has not centered on the particulars of the case at bar.

A potential juror's knowledge about the case does not merit moving the case to or retaining Las Cruces as the trial forum. "The law does not require that jurors be ignorant of the controversy; only that they be impartial." *Stafford,* 34 F.3d at 1566. Any concerns Defendant might have regarding this matter can be resolved during *voir dire* and by administering a juror questionnaire. *See, e.g., Hanning v. New England Mut. Life Ins. Co.,* 710 F. Supp. 213, 216 (S.D. Ohio 1989)(finding thirteen newspaper articles were insufficient to merit defendant's motion to transfer venue and noting that "potential prejudice can certainly be detected and cured during voir dire…"). As such, this factor weighs in favor of transferring trial to Albuquerque.

### E. Advantage of Having a Local Court Determine Questions of Local Law

There are important social costs associated with litigating in an inconvenient forum. As U.S. Supreme Court Justice Jackson stated in a precursor case to the enactment of 28 U.S.C. § 1404(a), "Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation…There is a local interest in having localized controversies decided at home." *Ferens v. John Deere Co.,* 494 U.S. 516, 529-30 (1990)(quoting *Gulf Oil*

*Corp. v. Gilbert,* 330 U.S. 501, 508-09 (1947)). "When the merits of an action are unique to a particular locale, courts favor adjudication by a court sitting in that locale." *Employers Mut. Cas. Co.,* 618 F.3d at 1170. The residents of Las Cruces should not be asked to bear the burden of serving on a jury in a case otherwise unconnected to the community. In contrast, the people of Albuquerque have a marked interest in the current litigation. In the United States of America, it is the People who are sovereign. All authority vested in the government is granted by the people. Police officers have the power to use force only because citizens grant them that power. Communities have an obvious interest—as well as a right—to ensure that their grant of power is not being abused and that police are exercising force in a manner that the community approves of. Albuquerque residents in particular have a right to determine whether members of their police department are violating the Constitutional and federal statutory rights of other Albuquerque citizens and ensuring that their own police department is accountable to the community. Accordingly, this factor weighs heavily in favor of transfer.

### F. Practical Considerations for an Easy, Expeditious, and Economical Trial

The attorneys for both parties, the parties themselves, as well as the majority of witnesses for both sides in this case are all based in Albuquerque, making this the more convenient and practical forum for an expeditious and economical trial. The plaintiffs chose to file in Albuquerque for the very reasons the law favors the forum most closely related to the litigation. The weight of the more practical considerations favors keeping this trial in Plaintiff's chosen forum.

**G. Remaining Factors**

The remaining factors, the enforceability of the judgment in another state, matters arising from a conflict of laws, and difficulties that may arise from congested dockets, are irrelevant or neutral as applied in this case because Plaintiff merely seeks to maintain the case in the forum in which it was filed or, alternatively, to transfer it between divisions within the United States District Court for the District of New Mexico. .

**CONCLUSION**

On balance, all relevant factors to be considered in determining whether venue should be transferred, weigh in favor of transferring the trial forum to Albuquerque. For the convenience of the parties and witnesses, and in the interest of justice, Plaintiff respectfully moves this Court to conduct the trial of this matter in the forum in which it was filed –the Albuquerque Division of the United States District Court for the District of New Mexico.

Respectfully submitted,



*/s/ Randi McGinn*
Randi McGinn
Kathleen J. Love
Kevin Holmes
201 Broadway Blvd. SE
Albuquerque, New Mexico 87102
p: (505) 843-6161
f: (505) 242-8227
e: Randi@McGinnLaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing pleading was served upon all counsel of record via electronic mail and via the CM/ECF system on this, the 6th day of May, 2015.

>Luis E. Robles
>Robles, Rael & Anaya, PC
>500 Marquette Ave NW, #700
>Albuquerque, NM 87102
>luis@roblesrael.com
>
>W. Ann Maggiore
>Butt, Thornton & Baehr, PC
>P.O. Box 3170
>Albuquerque, NM 87190
>wamaggiore@btblaw.com

*/s/ Randi McGinn*
Randi McGinn